545 P.2d 968

Kenneth C. ATKISON, Deceased, Donna J. Atkison, widow, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Sea Ray Boats, Respondent Employer,

Liberty Mutual Insurance Company, Respondent Carrier.

No. I CA–IC 1342.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 13, 1976.

Peter G. Dunn, Phoenix, for petitioner.

Greg L. Folger, Chief Counsel, Phoenix, for respondent Industrial Commission of Arizona.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Henry L. Timmerman, Phoenix, for respondent carrier.

## OPINION

EUBANK, Judge.

██ The only issue raised for our consideration is whether the evidence supports the award finding that Kenneth C. Atkison's death did not arise out of and in the course of his employment.

The facts are that decedent was a factory worker employed by Sea Ray Boats. Approximately two weeks prior to decedent's death, the vice-president of Sea Ray sought employee reaction to the idea of holding a company picnic such as had been held for many years in the past. The response was generally favorable, and the outing was set for Friday, May 26, 1972. This particular Friday was selected because it preceded the three-day Memorial Day weekend, and those employees who chose not to attend the picnic would therefore have a four-day holiday. The employer announced that the factory would be closed on May 26 and that no wages would be paid on that day. It was further announced, and stressed again at a second meeting, that attendance at the picnic was entirely optional, although those who had initially shown an interest in attending were asked to attend as food had been ordered on the basis of their initial indication. Transportation to the lake was not to be provided by the employer, although several of the boats made at the factory were to be at the lake for the use and enjoyment of those at the picnic. All food was to be provided by a caterer and paid for by the employer. The reason for this was, according to Mr. Murphy, the vice-president, so that no one felt pressure to attend out of a feeling of obligation to his fellow employees. Those who went were free to leave when they wished. No attendance was taken at the picnic; there

were no planned activities except the rides in the employer's boats.

As to the deceased's own view of the advisability or necessity of attending the picnic, petitioner and respondent infer different attitudes from the facts. The deceased and two of his friends and co-employees, Gary Knight and Johnnie Elder, had discussed with enthusiasm the forthcoming event. The employees had been told that their spouses were welcome to attend, and deceased told his wife of this fact. When it appeared that the wives of his two friends were going to be unable to go, deceased then told his wife there had been a change in company policy and that spouses could no longer attend. His wife's response was to ask the deceased not to attend, but, according to the wife and his in-laws, deceased stated to them that he felt compelled to be at the picnic in order to insure his job security. Petitioner relies on this evidence as establishing that attendance at the picnic, from a practical point of view, was in fact mandatory, citing *Lawrence v. Industrial Commission*, 78 Ariz. 401, 281 P.2d 113 (1955). There the court stated:

> The degree of pressure which the employer must be shown to exert in order to find that he directed an employee in a given action must not be a requirement which ignores the realities of business. The superior position of the employer permits compulsion to be exerted indirectly. While a suggestion or encouragement may be substituted for the command it would be unrealistic to fail to recognize that the force of such substitutes may equal that of an express order. The employer's position of advantage requires that this be acknowledged if responsibility is to be commensurate with directive authority. 78 Ariz. at 404, 281 P.2d at 115.

On the other hand, the inference which respondent seems to be drawing from these facts is that the deceased told his wife and in-laws that he felt attendance was mandatory so that he would have a good excuse

for going to the picnic with his two friends (whose wives could not attend) instead of with his wife. Both of these two employees testified that they did not feel that attendance at the picnic was mandatory.

On the day of the picnic the deceased traveled with Elder and Knight, in the latter's car, to the picnic. There they rode in the motor boats, ate, left for a while to "tube" on the Verde River, then returned to the boat ramada.

Then they departed from the picnic area and went to a point a quarter or half mile away from the ramada where they went tubing on the lake. They selected a spot away from the course used by the motor boats. While paddling the tubes, the deceased was washed from his tube and drowned.

Respondent makes much of the fact that at the time of the drowning deceased was floating on his inner tube about one-quarter to one-half mile away from the ramada which was the site selected by the employer for the picnic. Respondent urges that this shows a deviation from his employment, if these acts were to be held established. However, we agree with the hearing officer that selection of an area away from the line of operation of the motor boats was sensible and not unreasonable, and did not constitute a material deviation.

The hearing officer's specific findings supporting the above are as follows:

. . . there is no evidence that the picnic added to the Company's asset of goodwill with its customers. Improvement of morale of the employees probably was a consideration but, as described by Professor Larson,[1] it is a vague benefit when considering the advantages to the employer to insist, or infer, that the picnic was an integral part of the employee's obligation to the Company. Furthermore, the renewal of the picnic was at the urging of the employees—not the employer.

But the critical element is to what extent the deceased employee's attendance was voluntary. Pursuant to Professor Larson's "series of tests" there was a degree of encouragement here by the employer for employee attendance, but it was based upon those people who had previously indicated that they would attend and was only for the purpose of insuring that there would be neither too much nor too little food supplied by the caterer hired by the employer.

Nor is there any evidence of indirect pressure by the employer for employee attendance at the boating picnic. There is no indication whatsoever that on past occasions there arose a custom of employee attendance; an employee who did not attend the picnic was not required to report to work at the employer's plant; no record of attendance was taken at the picnic; neither the employees who chose to enjoy a picnic day at the lake nor those who chose to engage in other pursuits were paid for the Company holiday. *See, Larson, Workmen's Compensation Law*, § 22.23 (and cases cited therein.)[2]

1. Larson, Workmen's Compensation Law, § 22.00 (1972):
   "Recreational or social activities are within the course of employment when
   1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
   2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

   3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life." [Footnote added by the Court.]

2. Larson, Workmen's Compensation Law, § 22.23 (1972):
   "When the degree of employer involvement descends from compulsion to mere sponsorship or encouragement, the questions become

At this point it bears repeating that the deceased's companions on the fatal day, Johnnie Lee Elder and Gary Knight, co-employees, testified that they did not feel that attendance at the company picnic was mandatory, nor critical to the preservation or enhancement of their job status with Sea Ray Boats. The only testimony as to employer compulsion, direct or inferred, came from the deceased's wife and In-Laws and was based upon the deceased's statements to those witnesses. No other evidence was presented to show that the deceased's conviction that attendance was mandatory was shared by the other employees of the defendant employer. In other words, Ken Atkison's compulsion to attend the company picnic was purely on a subjective basis and not grounded on any actions of his employer. And his statement to his wife that she was not permitted to attend the picnic; the purchase of the inner tubes; and the earlier escapade of tubing down the Verde River casts doubt upon the deceased's statements that he felt his presence at the outing was critical to his continued employment with Sea Ray Boats.

■ The hearing officer is the trier of fact and this Court will not disturb his findings unless they are clearly erroneous or unsupportable by a reasonable view of the evidence. *Micucci v. Industrial Commission,* 108 Ariz. 194, 494 P.2d 1324 (1972); *Malinski v. Industrial Commission,* 103 Ariz. 213, 439 P.2d 485 (1968). We hold that the evidence supports ·the findings and award of the hearing officer that Kenneth C. Atkison's death did not arise out of and in the course of his employment.

The award is affirmed.

NELSON, P. J., and HAIRE, C. J., Division 1, concur.

closer, and it becomes necessary to consult a series of tests bearing on work-connection. The most prolific illustrations of this problem are company picnics and office parties. Among the questions to be asked are: Did the employer in fact sponsor the event? To what extent was attendance really voluntary? Was there some degree of encouragement to attend in such factors as taking a record of attendance, paying for the time spent, requiring the employee to work if he did not attend, or maintaining a known custom of attending? Did the employer finance the occasion to a substantial extent? Did the employees regard it as an employment benefit to which they were entitled as of right? Did the employer benefit from the event, not merely in a vague way through better morale and good will, but through such tangible advantages as having an opportunity to make speeches and awards?" [Footnote added by the Court.]