MICHAEL A. SHADE, APPELLANT, V. AYARS & AYARS, INC., AND
AETNA CASUALTY & SURETY, APPELLEES.

513 N.W.2d 881

Filed March 15, 1994.    No. A-93-728.

T.J. Hallinan and Gordon D. Ehrlich, of Cobb, Hallinan & Ehrlich, P.C., for appellant.

Richard R. Endacott, of Knudsen, Berkheimer, Richardson & Endacott, for appellees.

SIEVERS, Chief Judge, and IRWIN and MILLER-LERMAN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Michael A. Shade appeals the order of a single judge of the Workers' Compensation Court, affirmed on review by a three-judge panel, which determined that the injuries he sustained at a company-sponsored picnic were not compensable. We affirm the decision of the Workers' Compensation Court because the employer did not derive a substantial direct benefit from this event sufficient to bring it within the realm of employment.

## II. SCOPE OF REVIEW

■ Pursuant to Neb. Rev. Stat. § 48-185 (Supp. 1991), this court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Kraft v.*

*Paul Reed Constr. & Supply*, 239 Neb. 257, 475 N.W.2d 513 (1991).

In testing the sufficiency of evidence to support findings of fact made by the Workers' Compensation Court, which factfinding now occurs at the trial court level, rather than at the review panel level, the evidence must be considered in the light most favorable to the successful party. *Pearson v. Lincoln Telephone Co., ante* p. 703, 513 N.W.2d 361 (1994).

### III. FACTS

Shade began working for Ayars & Ayars as a laborer in the fall of 1989. The following summer, the company decided to hold a picnic at Branched Oak Lake, west of Lincoln, Nebraska. This was the second year that the company had had a picnic for the employees. A notice titled "Ayars & Ayars Summer Bash '90," stating the date, time, and place of the picnic, was placed in the paycheck envelope of each employee 2 weeks before the event. Each employee was to bring a covered dish, and Ayars & Ayars would provide the main dish and a keg of beer. Employees were contacted by Ayars & Ayars personnel to determine the number of people who would be attending the picnic. Employees scheduled to work Saturday afternoon were given that time off to attend the picnic if they wanted to do so. The parties stipulated that the employees were not expressly required to attend the picnic. Approximately 25 to 30 percent of the company's 30 to 35 employees did not attend. Shade testified that he thought Ayars & Ayars expected him to attend the picnic. In contrast, several employees testified that they thought attendance at the picnic was purely voluntary.

The picnic was held on Saturday, June 23, 1990. After Shade arrived with his fiancee, he spoke with others in attendance, and within 15 to 30 minutes, he drank five 12-ounce plastic cups of keg beer. Shortly thereafter, Shade and his foreman, along with several other employees, entered into a game of touch football, which rapidly escalated into tackle football. At the time of the accident, Shade was 6 feet 3 inches tall and weighed 235 pounds. He was tackled during a play by his foreman and a coworker and sustained a cervical spine injury. Shade is now a quadriplegic.

The single judge found that Shade failed to show that the company had derived "any substantial direct benefit from the activity 'picnic', although it may be inferred that it derived the intangible value of improvement in employee health and morale that is common to all kinds of recreation . . . ." The judge found that the picnic was primarily social in nature "even though the occasion was used to personally present safety awards." The judge held that he was bound to apply the tests and standards adopted by the Nebraska Supreme Court in *Gray v. State*, 205 Neb. 853, 290 N.W.2d 651 (1980), and therefore dismissed Shade's petition.

A three-judge panel affirmed the single-judge decision without opinion, and Shade timely appealed.

### IV. ANALYSIS

The sole issue before this court is whether there is sufficient competent evidence in the record to warrant the compensation court's judgment that the injury sustained at the picnic did not occur in the course of Shade's employment.

#### 1. LARSON'S TREATISE

■ Arthur Larson's treatise provides that recreational activities may be considered within the course of employment when

(1) [t]hey occur on the premises during a lunch or recreation period as a regular incident of the employment; or

(2) [t]he employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

(3) [t]he employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

1A Arthur Larson, The Law of Workmen's Compensation, § 22.00 at 5-87 (1993).

This case does not concern an activity which falls under subpart (1), therefore no further reference will be made to that subpart. The principle underlying subparts (2) and (3) is that if

the employer receives a substantial benefit from the activity, then the activity is considered to be within the scope of employment. Under subpart (2), if the employer requires attendance at the event, that employer is presumed to receive a benefit from the event. On the other hand, subpart (3) encompasses situations where the employee's attendance at the event was voluntary. In such a case, that employer is presumed to have received no substantial benefit from the event, leaving the employee to affirmatively show that the employer substantially benefited in order to bring the event within the course of employment.

However, there are cases that do not squarely fall within either subpart (2) or (3). In fact, if subparts (2) and (3) were points at opposite ends of a continuum, there would be cases that would lie between the two points—in a so-called "gray area"—where the employer's involvement "descends from compulsion to mere sponsorship or encouragement," and the presumption regarding a benefit to the employer slowly dissolves and must be bolstered or proven by the facts of each case. *Id*. at § 22.23 at 5-120. The case before us lies in this gray area.

## 2. Nebraska Cases

Three cases in Nebraska which deal with the issue of compensability of injuries sustained by employees engaged in social or recreational activities include *Gray v. State, supra*; *Kuethe v. State*, 191 Neb. 167, 214 N.W.2d 380 (1974); and *Adler v. Jerryco Motors, Inc.*, 187 Neb. 757, 193 N.W.2d 757 (1972).

In *Adler*, the employee sustained injuries while racing a motorcycle owned by his employer. The record revealed that the employee raced motorcycles prior to his employment with Jerryco Motors. The company used a caricature of the employee and the winning motorcycle on the company truck and displayed the motorcycle on a pedestal at an automobile show. The compensation court dismissed the employee's claim for benefits. The Nebraska Supreme Court reversed the compensation court's decision. After discussing the appropriate scope of review, the court held that the dismissal was not

supported because of the evidence indicating that the company had used the employee's winning record. In reaching its decision, the court adopted the same tests stated in 1A Larson, *supra*, § 22.00, regarding when recreational activities come within the scope of employment. The court found that the employer had received a substantial direct benefit by advertising its association with the employee and the winning motorcycle, which benefit was sufficient to bring the racing activity within the course of employment.

In *Kuethe*, the employee was a state investment officer. He was authorized, subject to approval of the Governor, to employ financial advisors and private consultants on a contract basis. No specific restrictions were placed on his travel. He was killed in a motor vehicle accident while returning home after spending the better part of the day playing golf and discussing investments with a representative of Dean Witter and Company. The employee had not indicated whether he intended to purchase any investment products on behalf of the state. A voucher for this trip was paid by the state. The compensation court dismissed the claim for benefits. On appeal, the Nebraska Supreme Court reiterated the parameters of the employer benefits test found in 1A Larson, *supra*, § 22.00, and after applying the scope of review to the record, concluded that the judgment of the district court was correct.

In *Gray v. State*, 205 Neb. 853, 290 N.W.2d 651 (1980), the facts giving rise to the lawsuit were not in dispute. The employee, who worked for the Nebraska Department of Labor, was seriously injured in a motor vehicle accident while en route to a professional association meeting of persons engaged in community services in the areas of employment security and employment insurance. The compensation court found that the state did not derive a substantial direct benefit from Gray's attendance at the meeting, and dismissed the petition. The Nebraska Supreme Court affirmed, concluding that the benefit to the state was neither substantial nor direct, that neither administrative leave nor expenses were granted to the employee to attend the meeting, and that membership in the organization was neither expressly nor impliedly required. The court stated again that given the scope and standard of review, it must

conclude that the judgment of the Workers' Compensation Court was correct in dismissing the employee's petition.

### 3. HELPFUL CRITERIA IN A DIFFICULT AREA

The existence of contrary decisions springing from similar fact patterns reflects, in part, the difficulty courts have in establishing whether a case is in the employment arena. As noted above, Larson's subpart (2) scenario expressly requires the employee to attend the employer's event. See *Higgins v. Ronkonkoma Fire District, Volunteer Fire Company*, 81 A.D.2d 721, 439 N.Y.S.2d 459 (1981) (holding that the employee's injury occurred in the course of employment because the fire chief had ordered him to appear at an open house commemorating the district's anniversary and act as bartender). When an employer requires attendance impliedly, an employee must show that he or she subjectively believed that the employer required attendance and that the belief was objectively reasonable. 1A Arthur Larson, The Law of Workmen's Compensation, § 22.22 (1993). See, also, *Smith v. Workers' Compensation Appeals Bd.*, 191 Cal. App. 3d 127, 236 Cal. Rptr. 248 (1987); *Atkison v. Industrial Commission*, 26 Ariz. App. 6, 545 P.2d 968 (1976). Larson has offered several questions a court may ask to aid in determining if an event comes within the scope of employment. These include: (1) Did the employer sponsor the event? (2) Was attendance really voluntary? (3) Did the employer encourage attendance as reflected by its (a) taking a record of attendance, (b) paying employees for the time spent at the event, (c) requiring the employee to work if he or she did not attend, or (d) maintaining a known custom of attending? (4) Did the employer substantially finance the occasion? (5) Did the employees regard the event as a benefit to which they were entitled? and (6) Did the employer benefit from the event, not merely in a vague way through better morale and good will, but through such tangible advantages as having an opportunity to make speeches and awards? 1A Larson, *supra*, § 22.23.

### 4. OTHER JURISDICTIONS

The above questions have been used by courts to establish a structural analysis in determining whether the event falls within

the realm of employment. For example, in *Bayerl v. Badger Mfg. Co.*, 169 Mich. App. 444, 426 N.W.2d 736 (1988), the Michigan Court of Appeals held that an employer-sponsored picnic was not within the realm of employment where attendance was purely voluntary, employees were not paid to attend, no record of attendance was made, the event was scheduled on a nonworkday, there was no indication that the employees felt they were entitled to the event, no awards were ever presented, and no other evidence was presented that the employer reaped a benefit greater than increased morale and good will. In reaching this result, the court also considered that notices of the event were posted in the plant and included in employee pay envelopes, the employer paid for all food and drink consumed at the picnic, and notices were sent out to ascertain the number of employees or family members who would be attending. Other jurisdictions have used a similar analysis. See, e.g., *Val Gene's & Associates v. Balogun*, 833 P.2d 1265 (Okla. App. 1992) (affirming the lower court's award of compensation benefits for injuries sustained by an employee while participating in an employer-sponsored, intracompany softball program when the court found that the employer induced the employee to participate); *Chilton v. Bowman Gray Sch. of Medicine*, 45 N.C. App. 13, 262 S.E.2d 347 (1980) (holding that a company picnic was outside the realm of employment where it was unclear whether the employer sponsored the picnic, notice of the picnic was not printed on the employer's stationery, attendance was voluntary, no record of attendance was taken, employees did not feel entitled to the event, and the employer did not hand out awards); *Feaster v. S. K. Kelso & Sons*, 22 Pa. Commw. 20, 347 A.2d 521 (1975) (affirming a lower court's award of compensation for injuries sustained at an annual picnic sponsored and paid for by the employer, announced by a poster at the employer's business, and where the referee found that the employer's interest in good employee relations was promoted by the picnic); *Ricciardi v. Damar Products Co.*, 45 N.J. 54, 211 A.2d 347 (1965) (holding that a company picnic was within the scope of employment where management desired a good turnout, an employee committee was formed with management's approval and urged

all employees to attend, the picnic was held on a nonworkday, and the employees were not expressly required to attend).

█ Reviewing the record in the present case in a light most favorable to the successful party, *Hernandez v. Hawkins Constr. Co.*, 240 Neb. 129, 480 N.W.2d 424 (1992), we note that the parties stipulated that Ayars & Ayars did not expressly require its employees to attend the picnic. Further, Shade's subjective belief that Ayars & Ayars impliedly required the employees to attend is insufficient, standing alone, to prove employer compulsion to attend. The deposition testimony by other employees who believed that the event was entirely voluntary, as well as the facts that Ayars & Ayars did not make a record of attendance, pay employees for the time spent at the event, or require employees to work if they did not attend, support the compensation court's inferred finding that Shade's belief was objectively unreasonable. This factual determination cannot be overturned.

However, determining that Ayars & Ayars did not impliedly require attendance does not necessarily mean that Ayars & Ayars received no benefit from the event; it means only that Ayars & Ayars cannot be presumed to have received a benefit. Further analysis is required to determine whether Shade has shown that Ayars & Ayars received a benefit.

█ Shade has established the existence of only two of the six factors listed above which may be considered ·in determining whether or not an event falls under the realm of employment. First, Ayars & Ayars sponsored the event by picking the place, choosing the date, notifying employees of the event by use of company supplies during company time, and inserting the notice in the employees' pay envelopes. It released some employees from work so they could attend the picnic. Furthermore, it planned to have specific recreational activities at the picnic. Second, Ayars & Ayars arguably substantially financed the event by furnishing the main dish, the keg of beer, the equipment for the games, the gifts, and the safety awards. Ayars & Ayars' total expenditure for these items was $119.60.

Shade urges us to find that Ayars & Ayars substantially benefited from the picnic because it used the event to hand out safety awards and door prizes, and also claimed the cost of

these activities as a business expense on its tax return. It is difficult to conclude that a total expenditure of less than $120 by an employer should significantly influence the conclusion regarding whether a substantial benefit was realized by an employer.

### V. CONCLUSION

The compensation court did not err in applying the law to the facts in this case, and therefore, its judgment must stand. See § 48-185. This court will not substitute its own view of the facts for that of the Workers' Compensation Court when there is evidence in the record supporting the factual findings made by the Workers' Compensation Court. See *Cannia v. Douglas Cty.*, 240 Neb. 382, 481 N.W.2d 917 (1992). Therefore, viewing the evidence in the light most favorable to Ayars & Ayars, see *Wiese v. Becton-Dickinson Co.*, 239 Neb. 1033, 480 N.W.2d 156 (1992), we affirm the decision of the Workers' Compensation Court.

AFFIRMED.