192 N.J. Super. 467 (1984)
471 A.2d 56
JAMES COTTON, PETITIONER-RESPONDENT,
v.
WORTHINGTON CORPORATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1983.
Decided January 9, 1984.
*468 Before Judges BOTTER, PRESSLER and O'BRIEN.
Charles N. Martel argued the cause for appellant (Franchino & Lenahan, attorneys; Charles N. Martel on the brief).
Ernest N. Giannone argued the cause for petitioner (Giannone, Curreri & Caruso, attorneys; David C. Scalera on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
Petitioner James Cotton, an employee of appellant Worthington Corporation (Worthington), was injured on June 26, 1980, while playing in a softball game after work on a team composed of Worthington employees. The judge of workers' compensation held that Cotton's injury was compensable despite the stricter criteria incorporated in N.J.S.A. 34:15-7 by amendment that became effective on January 10, 1980. L. 1979, c. 283, § 1. We disagree with this holding and reverse the judgment below.
Petitioner was employed by Worthington at its East Orange plant on the day of the accident. He testified that he had been *469 playing on the "company" team for approximately three or four years. He said he "volunteered" to play when one of the foremen came around and asked employees who would like to play. The team played teams from other Worthington facilities and Worthington distributors. The team played approximately once every two weeks during the spring and summer. On the day in question petitioner finished work at 3:45 p.m. and the game started at approximately 4:30 p.m. in a public park. There were no facilities on company property on which softball games could be played, so employees would drive to nearby public parks where the games were held. Worthington did not supply transportation for these employees.
Petitioner's employer provided players with baseball caps with the Worthington logo (a large "W" with Worthington in small print written underneath), which were distributed at the plant. The company also supplied balls and bats, and, according to petitioner's proofs, refreshments such as drinks and hotdogs. Ronald Eriksson, a former industrial relations manager employed by Worthington, testified that the company had purchased softball equipment for use at its annual picnic which employees could borrow, but that the company did not sponsor a softball team. He testified that he had agreed to furnish 20 or 24 caps when asked to do so by one of the players, a foreman, but that he refused to furnish uniforms for the players. He also testified that there was a fund which annually amounted to approximately $15,000 to $20,000 from which funds were drawn to defray the cost of recreational activities for company employees. The fund was comprised of profits from vending machines as well as contributions made by Worthington. He denied that he had authorized the use of money from the fund for refreshments at softball games. According to Eriksson's testimony, the company sponsored an annual picnic attended by blue collar and white collar employees, a Christmas party for employees' children, a bowling team and a golf league. He denied that Worthington sponsored the softball team, describing the players as "a group of employees who liked to play softball." He also *470 testified that he never solicited the employees to play, nor did he ask "my people" to organize the games or anything else. He also said that he never attended a softball game in which the team participated. He testified that the company sponsored certain recreational activities because of their impact on morale and, consequently, on production. For that reason he said he encouraged employees to attend events which were sponsored by the company. He specifically denied that he purchased softball equipment because of the anticipated impact on production. As an example of the expenditures which came from the fund, he testified that the Christmas party for employees' children cost approximately $7,000 annually.[1]
From the evidence concerning the large amount of money spent for employees' recreational and social activities at the East Orange plant, the judge below concluded that Worthington derived corporate benefits "over and above any improvement in employee health and morale." He concluded, therefore, that petitioner satisfied the test for compensability for injuries suffered during recreational or social activities within the meaning of N.J.S.A. 34:15-7. As amended this statute provides in part:
When employer and employee shall by agreement, either express or implied ... accept the provisions of this article compensation for personal injuries to .. . such employee by accident arising out of and in the course of employment shall be made by the employer without regard to the negligence of the employer ... in all cases except ... when recreational or social activities, unless such recreational or social activities are a regular incident of employment and produce a benefit to the employer beyond improvement in employee health and morale, are the natural and proximate cause of the injury. ... [Emphasis supplied]
*471 The italicized portion of this statute was part of the amendment added by L. 1979, c. 283. The legislative intent was to restrict the class of compensable injuries occurring during recreational and social activities related to employment. Compare Joint Statement to Senate Committee Substitute for Senate Bill 802 and Assembly Bill 840[2] with Complitano v. Steel & Alloy Tank Co., 34 N.J. 300 (1961), rev'g on dissenting opinion below 63 N.J. Super. 444, 456 (App.Div. 1960) (Conford, J.A.D. dissenting) and Tocci v. Tessler & Weiss, Inc., 28 N.J. 582 (1959). This restriction was accomplished by adding two criteria for compensability, namely, that the recreational or social activity be (1) "a regular incident of employment" and (2) "produce a benefit to the employer beyond improvement in employee health and morale." Aside from the brief reference in the joint statement quoted in note 2 above, the Legislature did not expressly state what it meant by these criteria, and the courts will have to furnish the needed interpretation. It is clear, however, that the Legislature intended to overcome the holdings in Complitano and Tocci, which broadened the test for compensability from that which had once prevailed in this State. See Stevens v. *472 Essex Fells Country Club, 136 N.J.L. 656 (Sup.Ct. 1948); Konrad v. Anheuser-Busch, Inc., 48 N.J. Super. 386 (Cty.Ct. 1958); Padula v. Royal Plating & Polishing Co., 14 N.J. Super. 603 (Cty.Ct. 1951).
In Complitano the employee was injured in a softball game while playing on a team composed of co-employees. The majority of the Appellate Division denied compensation because of a number of factors, namely, (1) the team was organized by employees with little encouragement from management, (2) the game was not played on the employer's premises, (3) although the employer furnished uniforms bearing its name, the employer's contribution to support the team was insignificant in relation to its weekly payroll, (4) there was no appreciable benefit to the employer in the nature of advertising or publicity, although league standings were published in a local paper and (5) the employer exercised no control over the team and did not coerce or influence employees to play on the team. 63 N.J. Super. at 446-455. The majority opinion, written by Judge Foley, noted that cases in which compensability was based upon the "mutual benefit doctrine," all involved the employer's "encouragement" to participate in the function, encouragement which employees might interpret "as a command." Id. at 447-448. Judge Foley distinguished the Supreme Court's holding in Tocci, in which the employee's injury occurred while playing softball on company premises. In Tocci the Supreme Court emphasized that the games were played on the employer's premises as "customary luncheon hour activity" encouraged by the employer's furnishing the necessary equipment. 28 N.J. at 587. In distinguishing Complitano from Tocci, Judge Foley relied on 1 Larson, Workmen's Compensation Law (1952), § 22.24 at 337 and § 22.30 at 342. There, Larson stated that the majority view required as a condition of compensability that the activity take place on the employer's premises at a time which is closely related to working hours, or that some "element of compulsion or concurrent benefit to the employer" be shown in order to characterize the activity "as an incident of the employment."
*473 In his dissent in Complitano which was adopted by our Supreme Court, Judge Conford emphasized facts which indicated an intention on the employer's part to "sponsor" and encourage the team. He read Tocci as a case in which the recreation was deemed as "a regular incident and condition of the employment" because the games were played on company premises during the lunch hour. 63 N.J. Super. at 463. He concluded, moreover, that Tocci did not intend to bar recovery for injuries sustained during off-premises recreation provided the employer's participation in or contribution to the activity implied the expectation of benefit in the nature of "company advertising, or betterment of employer-employee relations." Ibid. Adopting this view, the Supreme Court allowed Mr. Complitano to recover.
This background is helpful in determining the legislative intent which found expression in the amendment to N.J.S.A. 34:15-7. The Complitano case offered alternate bases for recovery, namely, proof that the recreational or social activity was a "regular incident and condition of employment" or that the employer benefited from the activity. The amendment, on the other hand, requires that two tests be met, that the activity be a "regular incident of employment" and that the employer derive some benefit "beyond improvement in employee health and morale." On the facts in the case before us we conclude that petitioner has not satisfied the new statutory criteria for compensability.
It is clear that the softball games were not played as a regular incident of employment. We note that the games were not played on company premises. More significantly, the employer's contribution to, participation in, and encouragement of the activity did not rise to a level suggesting any compulsion on employees to engage in the activity. The judge of compensation did not address this part of the statutory criteria. He found merely that an increase in production would flow from improved employee morale and that the "other benefit" test required by the statute was satisfied. Since the "regular incident of employment" test was not met we need not decide whether increased *474 production which flows from improved morale is a benefit separate from improved morale which can satisfy the second prong of the new statutory requirements.
Accordingly, we reverse the judgment below and enter judgment for appellant, without costs.
NOTES
[1] The judge of compensation made no express findings as to whether money from the fund was used to purchase refreshments for the players at softball games. Petitioner testified that he did not contribute any money toward refreshments and did not think any of the other employees did. He said that on the day in question he had about six beers before the accident happened. The accident occurred in the middle of the game while he was running to first base, in the course of which he tripped and sprained his knee. The decision below could be read to imply that the judge concluded that the refreshments at softball games were in fact paid for by money received from the fund by a Worthington foreman.
[2] The joint statement declared that the amendments "would benefit employers by ... (6) declaring injuries sustained during recreational or social activities sponsored by the employer to be noncompensable unless such activities are a regular part of the employment...." See also the interpretation of N.J.S.A. 34:15-7 contained in A Report On The Workers' Compensation Amendments of 1979 issued by the New Jersey Department of Labor and Industry (July 1, 1981):

This section of the law introduced additional restrictions on employer liability. Injury or death resulting from certain work associated recreational and social activities are not compensable under the new law. [at 28]
In July 1982, the New Jersey Department of Labor again filed A Report On The Workers' Compensation Amendments of 1979 in which it explained under the heading  "Other Provisions to Tighten Criteria" 
Another change in the law denies compensability for injuries incurred solely in recreational or social activities, unless such recreational or social activities are a regular incident of employment and produce a benefit to the employer beyond improvement of employee health and morale, and are the natural and proximate cause of the death or injury. [at 9]