842 A.2d 156

PORFIRIO A. LOZANO, PETITIONER–APPELLANT,
v. FRANK DELUCA CONSTRUCTION,
RESPONDENT–RESPONDENT.

Argued December 2, 2003—Decided March 10, 2004.

514

516

*Raquel Romero* argued the cause for appellant (*Ms. Romero,* attorney; *Stephen G. Marshall,* on the brief).

*David P. Kendall* argued the cause for respondent (*Francis T. Giuliano,* attorney; *Mr. Kendall* and *Mr. Giuliano,* on the brief).

Justice ZAZZALI delivered the opinion of the Court.

In this workers' compensation case, we consider whether the phrase "recreational or social activities" as used in the Workers' Compensation Act encompasses activities that, although recreational or social in nature, are compelled by the employer.

While in the employ of a mason contractor, petitioner sustained an injury when he attempted to drive a go-cart on the property of his employer's customer. Petitioner alleges that he drove the go-cart only after his employer ordered him to do so. The Division of Workers' Compensation denied petitioner's claim for benefits, based on the recreational nature of go-cart driving and petitioner's failure to satisfy the two-part statutory test applicable to recreational and social activities. The Appellate Division affirmed.

We hold that when an employer compels an employee's participation in an activity generally viewed as recreational or social in nature, the employer thereby renders that activity work-related as a matter of law. We also hold that to recover under a theory of compulsion, the injured employee must establish that he or she engaged in the activity based on an objectively reasonable belief that participation was required. On the facts in this record, we cannot determine whether petitioner's claim that his employer commanded him to drive the go-cart is objectively reasonable. Therefore, we reverse the judgment of the Appellate Division and remand for further proceedings consistent with this opinion.

I.

At the time of his accident, respondent Frank DeLuca Construction (respondent or employer), a mason contractor, employed petitioner Porfirio Lozano as a general laborer. Lozano normally worked six days per week, from 8:00 a.m. to 4:00 p.m., at a rate of $10.00 per hour. Because of the nature of respondent's work as an independent contractor, Lozano did not have a fixed place of employment, but worked wherever his employer assigned him on any given day. Lozano, who did not have a driver's license and did not know how to drive, relied on Frank DeLuca,[1] the company's owner and Lozano's supervisor, for transportation between Lozano's home and the various work sites.

On the day of the accident, DeLuca picked up Lozano and another employee at their respective homes. at approximately 8:00 a.m. and took the two employees to the job site, a private home belonging to Peter Borbas. Under DeLuca's supervision, Lozano and his fellow employee constructed a stone wall on Borbas's

---

[1] We distinguish between Frank DeLuca Construction, the company that employed petitioner, and Frank DeLuca, the individual who owned the company and supervised Lozano on the day of the accident. We, therefore, refer to Frank DeLuca Construction as "respondent" or "employer" and to Frank DeLuca by name.

property. By approximately 5:00 p.m., the two employees had completed their task and were ready to return home.

Borbas had three go-carts parked on a paved, circular track that was separate from his driveway. As the two employees waited for DeLuca to take them home, Borbas and DeLuca each got into a go-cart and began driving around Borbas's track. When DeLuca finished, he directed Lozano to "get in" the go-cart. Not knowing how to drive, Lozano refused and explained that "[he] could not [drive] because [he] didn't know anything about it." DeLuca then told Lozano again to "get in," reassuring the employee that "it was easy." According to Lozano, he understood his supervisor's persistence to be a command and, therefore, got into the go-cart. On his first lap around the track, Lozano crashed into a parked truck and sustained severe injuries that required his hospitalization and the insertion of a plate and screws in his left ankle.

Lozano filed a claim with the New Jersey Division of Workers' Compensation, asserting that he sustained injuries from an accident arising out of and in the course of his employment. Respondent thereafter filed an answer disputing the work-relatedness of Lozano's accident. At trial, the parties agreed to bifurcate the proceeding and address solely the issue of respondent's liability.

As the only witness at the workers' compensation hearing, Lozano testified to the circumstances surrounding the accident. When asked on direct examination whether he interpreted DeLuca's directive to "get in" the go-cart as a command, Lozano stated that "[DeLuca] was my boss. I had to obey the order." Lozano's testimony was generally uncontested, although there was some initial uncertainty with respect to what time he had finished work on the day of the accident. Early in the trial, Lozano testified that he worked from 8:00 a.m. until 4:00 p.m. When later asked for the specific hour that he completed work on the day of the accident, Lozano stated that it was 5:00 p.m. That answer elicited a question from the judge about whether Lozano completed work at 4:00 or 5:00 p.m. In response, Lozano explained that he usually worked until 4:00 p.m., but that day he did not finish his

assignment until 5:00 p.m. He further testified that the accident occurred within minutes of his completion of the construction project.

At the conclusion of Lozano's direct examination, respondent moved for dismissal. Respondent argued that Lozano had failed to establish the requisite causal relationship between his employment and the accident. To support its motion, respondent cited to Lozano's testimony that the accident happened after Lozano had completed his work. Respondent maintained that this "would be a clear horseplay case" or, in the alternative, a recreational activity after work had ended. Under either category, respondent asserted that Lozano had not met his burden of showing a causal link between his employment and his injury.

Opposing the motion, Lozano focused on his presence at the work site at the time of the accident. Lozano stressed that he "was required to be there until his employer took him home." Thus, he maintained that he was still "in the course of employment" when DeLuca allegedly commanded him to "do this" in reference to driving the go-cart. Citing those circumstances, Lozano argued that relevant case law entitled him to compensation.

After hearing the parties' arguments, the Judge of Compensation granted respondent's motion to dismiss. In an oral opinion, the judge concluded that at the time of the accident, Lozano was engaged in a "recreational activity" that was outside the scope of his employment. Despite Lozano's presence on the job site, the judge found that Lozano was "off the clock" when the accident occurred. Stating that Lozano must have "had a lot of fun," the judge held that Lozano's injuries resulted from a recreational activity that did not satisfy the two-prong test set forth in *N.J.S.A.* 34:15–7.

In an unpublished opinion, the Appellate Division affirmed the dismissal of Lozano's claim for the reasons expressed by the Judge of Compensation in her oral opinion. We granted certifica-

tion, 177 *N.J.* 490, 828 *A.*2d 918 (2003), and now vacate and remand.

## II.

■ As amended in 1979, the Workers' Compensation Act provides in pertinent part that employers shall compensate employees for accidental injuries arising out of and in the course of employment except when "recreational or social activities ... are the natural and proximate cause of the injury[.]" *N.J.S.A.* 34:15–7. To that general rule of no-recovery for recreational or social activities, the act carves out an exception when "such recreational or social activities are a regular incident of employment and produce a benefit to the employer beyond improvement in employee health and morale[.]" *Ibid.* Simply stated, an employee injured during a recreational or social activity must satisfy a two-prong test to qualify for compensation under the act—the activity (1) must be a "regular incident of employment," and (2) must "produce a benefit to the employer beyond improvement in employee health and morale."

In disputing the compensability of Lozano's injuries, the parties rely on contrary interpretations of the phrase "recreational or social activities." Respondent argues that the plain language of *N.J.S.A.* 34:15–7 reflects a clear legislative intent to limit recovery for injuries suffered during all "recreational or social activities." In other words, respondent contends that the Legislature did not intend to distinguish between activities that an employer compels and those that an employee undertakes voluntarily. Relying on that construction of *N.J.S.A.* 34:15–7, respondent submits that the Judge of Compensation properly concluded that Lozano must satisfy the two-part statutory test before recovery can be permitted on the facts presented.

In contrast, Lozano asserts that the phrase "recreational or social activities" is ambiguous. According to Lozano, whether an activity is recreational or work depends on the underlying circumstances and the state of mind of the employee. Thus, an activity

traditionally viewed as recreational becomes work when it occurs on the work site and at the employer's direction. Under that approach, this case does not implicate the two-part statutory test because Lozano was not engaged in a "recreational or social activity" when the accident occurred.

Because resolution of the issue before us depends on the meaning given to the statutory phrase "recreational or social activities," we turn to familiar principles of statutory construction for guidance. Interpretation of a statute begins with "the plain meaning of the provision at issue." *Burns v. Belafsky,* 166 *N.J.* 466, 473, 766 *A.*2d 1095 (2001). When "the statutory language is clear and unambiguous, and susceptible to only one interpretation, courts should apply the statute as written without resort to extrinsic interpretative aids." *In re Passaic County Utils. Auth.,* 164 *N.J.* 270, 299, 753 *A.*2d 661 (2000) (citing *Bergen Commercial Bank v. Sisler,* 157 *N.J.* 188, 202, 723 *A.*2d 944 (1999)). However, if two interpretations of the language are plausible, a reviewing court must interpret the statute to effectuate the legislative intent, utilizing extrinsic evidence when it is helpful. *Burns, supra,* 166 *N.J.* at 473, 766 *A.*2d 1095.

No specific provision of the act defines the phrase "recreational or social activities." An employer-sponsored company picnic held off-premises and after work hours that employees voluntarily attend for their own personal pleasure certainly falls within the definition of "recreational or social activities." But, there is a question whether employees would describe a company event as "recreational or social" and consider it noncompensable if the employer required attendance. That is, from the perspective of an employee, the meaning of the phrase "recreational or social activities" is not self-evident. The act's silence on the meaning of the disputed phrase requires our inquiry to extend beyond the plain language of *N.J.S.A.* 34:15–7.

### III.

In ascertaining legislative intent, we look to the legislative history behind the 1979 package of amendments that added to

*N.J.S.A.* 34:15–7 the provision dealing with recreational and social activities. However, as discussed further below, that history is relatively scant. Thus, it is essential to consider the 1979 amendments in the context of the relevant case law both before and after their enactment.

A.

As originally drafted in 1911, the Workers' Compensation Act simply provided that compensation would be awarded for injuries or death from accidents "arising out of and in the course of employment." *L.* 1911, *c.* 95, § 7. The original statute contained no specific reference to recreational and social activities. *Ibid.* Due to "the sweeping generality of the statutory terms," the task of enunciating principles to differentiate compensable from noncompensable accidents rested with the courts. *Hornyak v. The Great Atl. & Pac. Tea Co.,* 63 *N.J.* 99, 102, 305 *A.2d* 65 (1973).

When drawing the line between compensable and noncompensable recreational and social activities, courts considered

(a) the customary nature of the activity; (b) the employer's encouragement or subsidization of the activity; (c) the extent to which the employer managed or directed the recreational enterprise; (d) the presence of substantial influence or actual compulsion exerted upon the employee to attend and participate; and (e) the fact that the employer expects or receives a benefit from the employee's participation in the activity.

[*Harrison v. Stanton,* 26 *N.J.Super.* 194, 199, 97 *A.2d* 687 (App.Div.1953), *aff'd o.b.,* 14 *N.J.* 172, 101 *A.2d* 554 (1954).]

The absence or presence of a particular factor was not dispositive. *Ricciardi v. Damar Prods. Co.,* 45 *N.J.* 54, 59–60, 211 *A.2d* 347 (1965) (finding that employer-sponsored picnic fell within act's scope even though attendance at picnic was voluntary and picnic was not held on work premises). Rather, courts assessed the work-relatedness of the recreational or social activity based on the totality of the circumstances in any given case. *Id.* at 60, 211 *A.2d* 347 (clarifying relevant inquiry as "whether the event is sufficiently work-connected to bring the employees within the coverage of the compensation law").

Although employer compulsion was a relevant factor, few cases dealt with injuries suffered during mandatory recreational and social activities. Instead, cases typically involved the more complicated scenario of voluntary recreational activities that the employer either sponsored, permitted, or encouraged. *See, e.g., ibid.* (employer-sponsored picnic); *Complitano v. Steel & Alloy Tank Co.,* 34 *N.J.* 300, 168 *A.*2d 809 (1961) (employer-sponsored softball game held after working hours and off-premises), *rev'g on dissenting opinion below,* 63 *N.J.Super.* 444, 164 *A.*2d 792 (App.Div.1960) (Conford, J.A.D., dissenting); *Tocci v. Tessler & Weiss, Inc.,* 28 *N.J.* 582, 147 *A.*2d 783 (1959) (employer-sponsored softball game organized by employees, but played on employer's property during lunch hour); *Stevens v. Essex Fells Country Club,* 136 *N.J.L.* 656, 57 *A.*2d 469 (Sup.Ct.1948) (employer-sponsored golf tournament); *Kelly v. Hackensack Water Co.,* 10 *N.J.Super.* 528, 77 *A.*2d 467 (App.Div.1950) (annual outing sponsored and encouraged by employer); *Padula v. Royal Plating & Polishing Co.,* 14 *N.J.Super.* 603, 82 *A.*2d 225 (Law.Div.1951) (employer-sponsored softball game); *Fick v. Am. Mut. Liab. Ins. Co.,* 26 *N.J. Misc.* 244, 58 *A.*2d 854 (Dep't Labor 1948) (attendance encouraged by employer at picnic sponsored by employee association).

Early cases denied compensation for injuries sustained during employer-sponsored recreational and social activities at which attendance was not required and from which the employer did not receive a clear business benefit. *E.g., Stevens, supra,* 136 *N.J.L.* at 658–59, 57 *A.*2d 469 (denying compensation to caddy for injury suffered during weekly golf tournament sponsored by employer exclusively for employees); *Padula, supra,* 14 *N.J.Super.* at 606, 82 *A.*2d 225 (holding injuries suffered during employer-sponsored softball game non-compensable); *Fick, supra,* 26 *N.J. Misc.* at 245, 58 *A.*2d 854 (concluding that picnic organized by employee association "was not related to employment in the statutory sense"). Those decisions were animated by a common concern that employers should not bear the cost of injuries sustained during recreational activities that have no work connection, aside from an employer's financial contribution, and in which employees

engage voluntarily for their own personal benefit. *See Stevens, supra,* 136 *N.J.L.* at 659, 57 *A.*2d 469 (explaining that "[g]enerosity alone to one's employee does not render one liable for compensation under the act for injury suffered while in the enjoyment of the favor").

In a series of cases beginning with *Tocci,* however, we departed from that approach and expanded the scope of coverage for voluntary recreational and social activities. *Tocci* involved an employee who was injured while engaging in a customary lunchtime softball game played on the company's property during the employee's lunch hour. 28 *N.J.* at 584–86, 147 *A.*2d 783. Although the employees initiated and organized the games, the employer supplied some necessary equipment. *Id.* at 585, 147 *A.*2d 783. A divided Court reversed the dismissal of the employee's claim.

The majority found that the employer's financial contribution, coupled with the time, place, and customary nature of the games, rendered the activity a regular incident and condition of employment. *Id.* at 593–94, 147 *A.*2d 783. The majority deemed the recreational softball games no different from other customary activities considered to be within the course of employment, such as eating lunch or taking a break for coffee or a cigarette. *Id.* at 593, 147 *A.*2d 783. In view of that analogy and consistent with the "prescribed liberal construction of the [act]," the majority concluded that the accidental injury had sufficient work connection to fall within the act's coverage. *Ibid.*

The two dissenting justices argued that recovery should be denied in the absence of employer compulsion and employer benefit. *Id.* at 597, 147 *A.*2d 783 (Heher, J., dissenting). Citing the fact that "the [employees] who used the land for play were in the pursuit of their own desires, unrelated to the employment," the dissent criticized the analogy between eating lunch and playing softball. *Id.* at 598, 147 *A.*2d 783. In addition, the dissent, indirectly presaging this Court's decision in *Complitano,* rejected the majority's reliance on the employer's financial support. *Id.* at

598–99, 147 A.2d 783. The dissent maintained that an employer's monetary contribution, given without the prospect of a commercial benefit, should not be considered as bringing a voluntary game "within the ambit of the employment." *Id.* at 599, 147 A.2d 783 (citing, among other cases, *Stevens, supra,* 136 *N.J.L.* 656, 57 A.2d 469).

A divided Court further expanded the scope of compensable recreational and social activities in *Complitano.* As indicated above, early courts denied coverage when the employer's only involvement in the recreational activity entailed financial support with no evident commercial motive. *E.g., Stevens, supra,* 136 *N.J.L.* at 658, 57 A.2d 469. The majority's decision in *Complitano,* however, broadened the inquiry to one of " 'whether the employer's participation in or contribution to the arrangements for the recreation is such that it is reasonably inferable that a benefit was expected therefrom, such as company advertising, or betterment of employer-employee relations....' " *Sarzillo v. Turner Constr. Co.,* 101 *N.J.* 114, 118, 501 A.2d 135 (1985) (quoting *Complitano, supra,* 63 *N.J.Super.* at 463, 164 A.2d 792 (Conford, J.A.D., dissenting)). The majority of the Court accepted the reasoning that an employer's financial support for a recreational activity can provide an adequate connection to employment to warrant an award of compensation. *Complitano, supra,* 63 *N.J.Super.* at 466–67, 164 A.2d 792 (Conford, J.A.D., dissenting). In essence, the majority permitted courts to infer an employer benefit from the employer's monetary contribution. *Id.* at 466, 164 A.2d 792.

A review of the pre-amendment case law reveals only one published opinion dealing with a compelled social activity. In *Harrison v. Stanton, supra,* an employee sought coverage under the act for an injury suffered while driving his child's babysitter home. 26 *N.J.Super.* at 198, 97 A.2d 687. The employee had hired the babysitter so that he and his wife could attend an event sponsored by an organization that his employer had directed him to join. *Id.* at 199–200, 97 A.2d 687. The employer facilitated the

employee's attendance at the event by defraying the expense of the babysitter and providing transportation for the employee and his wife. *Id.* at 197, 97 *A.*2d 687. At trial, the employee explained, " 'I joined [the organization] under the direction of [my employer].' " *Id.* at 198, 97 *A.*2d 687. Similarly, the employer acknowledged that " 'whenever it was possible for [the employee] to attend [an event sponsored by the organization,] I wanted him to, because I feel it is good for business for him to be there and mingle with the people.' " *Id.* at 197; 97 *A.*2d 687. Noting that the employee's attendance at the event "was expected, if not directed" by the employer, the Appellate Division described the activity as an "assigned duty" and held that the accident arose out of and in the course of employment. *Id.* at 198, 200, 97 *A.*2d 687. We affirmed for the reasons expressed by the panel, 14 *N.J.* 173, 101 *A.*2d 559 (1954), thereby embracing the principle that with respect to recreational and social activities, compulsion is the *sine qua non* of work-relatedness.

In the years before the 1979 amendments, courts also employed the basic philosophy underpinning *Harrison* to compensate employees who were injured while engaging in a mandated activity that, although non-social in nature, was nevertheless unrelated to the employee's day-to-day job duties. For example, in *Ferragino v. McCue's Dairy,* 128 *N.J.L.* 525, 526, 26 *A.*2d 730 (Sup.Ct.1942), the court considered whether to allow recovery to a dairy-company employee who was injured while following his employer's instruction to help a local church move a piano. Recognizing that "[m]oving a church piano . . . is not ordinarily *per se* an incident to the dairy business," the court observed that "it may become so when done, as here, on the order of the employer for a customer in the effort to build up good will and retain the customer's friendly interest." *Id.* at 527, 26 *A.*2d 730. The court also acknowledged the difficult dilemma faced by employees when confronted with a supervisor's order, explaining that "it is not easy to see how [the employee] could have refused to obey except at the risk of losing his job." *Ibid.* Viewing the ordered activity as part of the employee's "contract of hire," the court affirmed the award

of compensation. *Ibid.; see also Wilkerson v. Steinberg & Spiel-fogel, Inc.,* 20 *N.J. Misc.* 306, 310, 27 *A.*2d 206 (C.P.1942) (awarding compensation to grocery employee for injury sustained while moving furniture at supervisor's direction, despite unrelatedness of task to normal job duties).

From that summary of pre-amendment decisions, we discern two categories of cases dealing with activities ostensibly unrelated to work. The first category encompasses cases involving employer-sponsored recreational and social activities in which the employee voluntarily engaged. For injuries falling within that category, *Tocci* and *Complitano* offered alternative theories for recovery. An employee could establish an adequate link between the recreational activity and work by demonstrating either that the time, place, and customary nature of the activity rendered it "a regular incident and condition of employment," or that the degree of employer support indicated either an indirect or direct benefit to the employer. The second category of cases involved employer-compelled activities. As *Harrison* and *Ferragino* demonstrate, courts in those circumstances deemed that a mandated activity fell within the scope of employment regardless of the activity's departure from the employee's normal job duties.

## B.

Against that backdrop of decisional law, the Legislature extensively amended the Workers' Compensation Act in 1979. Those amendments were designed to "put significantly more money into the hands of the more seriously injured workers while providing genuine reform and meaningful cost containment for New Jersey employers from unjustified workers' compensation costs that are presently among the highest in the nation." *See* Senate Labor, Industry, and Professions Committee, *Joint Statement to Senate Committee Substitute for N.J. Senate No. 802 and Assembly Committee Substitute for N.J. Assembly No. 840,* at 1 (Nov. 13, 1979) (*Joint Statement*).

One means of effectuating that fiscal goal was the exclusion of "most injuries sustained during recreational or social activities." *Poswiatowski v. Standard Chlorine Chem. Co.*, 96 *N.J.* 321, 331 n. 2, 475 *A.*2d 1257 (1984). To that end, the Legislature added language to *N.J.S.A.* 34:15-7 that explicitly eliminated injuries suffered during "recreational or social activities" as a basis for recovery. As noted, the Legislature made an exception for those recreational and social activities that are a "regular incident of employment" and "produce a benefit to the employer beyond improvement in employee health and morale." *L.* 1979, *c.* 283, § 1. According to the Joint Statement accompanying the amendments, the provision was added to reduce costs for employers by "declaring injuries sustained during recreational or social activities *sponsored by the employer* to be noncompensable unless such activities are a regular part of the employment[.]" *Joint Statement*, at 2 (emphasis added).

Although legislative intent to curb awards for recreational and social activities is evident from the legislative history of the 1979 amendments, the committee statements do not reveal how the Legislature intended to achieve that goal. *See Sarzillo, supra*, 101 *N.J.* at 119-20, 501 *A.*2d 135 (noting lack of clarity with respect to manner in which amendments "tighten[ ] the general criteria by explicitly requiring that the recreational or social activities be 'a regular incident of employment' "). Apart from the reference to "sponsored" activities in the Joint Statement, the Legislature did not qualify the phrase "recreational or social activities." *Cotton v. Worthington Corp.*, 192 *N.J.Super.* 467, 471, 471 *A.*2d 56 (App.Div.), *certif. denied*, 96 *N.J.* 301, 475 *A.*2d 593 (1984). Nonetheless, courts interpreting the amended *N.J.S.A.* 34:15-7 have generally agreed that the Legislature intended to reverse the judicial trend, reflected in *Tocci* and *Complitano*, of broadly formulating the scope of employment to include most voluntary recreational and social activities. *E.g., Sarzillo, supra*, 101 *N.J.* at 119, 501 *A.*2d 135 (noting that Legislature "laid to rest" doctrine of "mutual benefit" to employees and employers articulated in *Tocci* and *Complitano* ); *Cotton, supra*, 192 *N.J.Su-*

*per.* at 471, 471 *A.*2d 56 (explaining that "the Legislature intended to overcome the holdings in *Complitano* and *Tocci* ").

However, of greater relevance to this case is the continued distinction made by post–1979 courts between compelled recreational and social activities, on one hand, and those that the employer merely permits or sponsors, on the other. *See, e.g., Sarzillo, supra,* 101 *N.J.* at 121, 501 *A.*2d 135 (declining to award benefits to employee in part because employer had not compelled participation in injury-inducing recreational activity); *Dowson v. Borough of Lodi,* 200 *N.J.Super.* 116, 118–20, 490 *A.*2d 374 (App. Div.1985) (affirming judge of compensation's denial of benefits based in part on absence of evidence that employer compelled employee to participate in softball game); *Cotton, supra,* 192 *N.J.Super.* at 473, 471 *A.*2d 56 (declining to categorize softball games as regular incident of employment when "employer's contribution to, participation in, and encouragement of the activity did not rise to a level suggesting *any compulsion* on employees") (emphasis added). *Sarzillo, Dowson,* and *Cotton* all suggest that by requiring participation in a recreational or social activity, the employer makes the activity "a regular incident of employment." But none of those decisions address whether evidence of employer compulsion also requires satisfaction of the "benefit" prong of *N.J.S.A.* 34:15–7.

The Appellate Division answered that precise question in *McCarthy v. Quest International Co.,* 285 *N.J.Super.* 469, 667 *A.*2d 379 (1995), *certif. denied,* 143 *N.J.* 518, 673 *A.*2d 277 (1996). There, the court considered whether the Workers' Compensation Act as amended in 1979 afforded compensation to an employee who was injured while participating in a tug-of-war competition during a company picnic. *Id.* at 470, 667 *A.*2d 379. The Appellate Division found that because the employee joined in the tug-of-war game in response to a mandate from the company's president, " 'engagement in the activity was an incident of her employment.' " *Id.* at 473–74, 667 *A.*2d 379 (quoting judge of compensation).

The panel observed, however, that compulsion "to participate did not alone justify a finding that [the employee's] injury arose out of and in the course of employment." *Id.* at 473, 667 *A.*2d 379. Noting that "the 1979 statutory amendments did not provide specifically for different treatment when an employee is ordered or assigned to participate in an activity," the panel concluded that the employee also had to establish that the activity conferred a benefit on her employer beyond improvements in worker morale and health. *Id.* at 473–74, 667 *A.*2d 379. Addressing that prong, the court determined that the employer used the picnic to foster a working relationship between two recently merged companies and thus had a commercial motive beyond generosity toward the employees. *Id.* at 473, 667 *A.*2d 379. Accordingly, the panel upheld the award of compensation based on the employee's satisfaction of both prongs of the test set forth in *N.J.S.A.* 34:15-7.

## IV.

### A.

Although the court in *McCarthy* arrived at the correct result, we disagree with its interpretation of *N.J.S.A.* 34:15-7. In view of the case law in existence in 1979, we construe the phrase "recreational or social activities" as it appears in *N.J.S.A.* 34:15-7 to encompass only those activities in which participation is not compulsory. Accordingly, we hold that when an employer compels an employee to participate in an activity that ordinarily would be considered recreational or social in nature, the employer thereby renders that activity a work-related task as a matter of law. That factual context does not implicate the two-prong test set forth in *N.J.S.A.* 34:15-7. Our holding recognizes that an employer always retains the power to expand the scope of employment by directing the employee to engage in tasks outside of the employee's general job duties. 2 Arthur Larson, *Larson's Workers' Compensation Law* § 27.04[4], at 27–42 (2000); *see also Okla. Natural Gas Co. v. Williams,* 639 *P.*2d 1222, 1224 (Okla.1981) (noting that "[o]ne who is expressly required to participate [in a

recreational activity] is clearly furthering the master's business").
Thus, we agree with Dean Larson that "[i]f the activity, although
not an integral part of the job, is in effect required, it is clear
enough that the employer has brought that activity within the
employment." Larson, *supra*, § 22.04[2], at 22–20.

■ Our reading of the legislative history persuades us that the
1979 amendments were not designed to overrule those earlier
cases finding that compulsion, standing alone, brings an activity
that is otherwise unrelated to work within the scope of employ-
ment. Specifically, the Joint Statement's focus on curbing recov-
ery for "injuries sustained during recreational or social activities
*sponsored* by the employer" indicates that the 1979 amendments
were aimed primarily at overturning those pre-amendment deci-
sions in which we relied on the employer's financial support to
bring a recreational or social activity within the ambit of the act.
*Joint Statement*, at 2 (emphasis added). We presume that the
Legislature was thoroughly conversant with the basic principles
underlying the pre-amendment case law dealing with employer-
compelled activities. *Brewer v. Porch*, 53 *N.J.* 167, 174, 249 *A*.2d
388 (1969). When viewed in light of the Legislature's express
concern over tightening the criteria for employer-sponsored activi-
ties, the omission of any reference in *N.J.S.A.* 34:15–7 to employ-
er-compelled activities suggests the Legislature did not intend to
exclude required activities from workers' compensation coverage
as a matter of law. Simply put, if the Legislature had wanted to
restrict coverage for activities beyond events merely sponsored by
the employer and address employer-compelled activities, it would
have said so in no uncertain terms.

A contrary reading of *N.J.S.A.* 34:15–7 would impose on em-
ployees a classic Hobson's choice: obey the employer's order and
jeopardize eligibility for workers' compensation benefits, or refuse
to engage in the required activity and risk loss of employment.
We do not believe the Legislature intended such a result. That
construction of the statute does violence to the long-standing
recognition that the act "is humane social legislation designed to

place the cost of work-connected injury on the employer who may readily provide for it as an operating expense." *Hornyak, supra,* 63 *N.J.* at 101, 305 *A.*2d 65. Notwithstanding the cost-containment goals of the 1979 amendments, that legislative overhaul did not alter the act's basic design as remedial legislation. Hon. Alfred J. Napier, *Impact of the Reform Act of 1980,* 96 *N.J. Lawyer* 17, 17 (Summer 1981) (noting that "the basic pattern and objectives of our Workers' Compensation Act remain unchanged"); *see also Nemchick v. Thatcher Glass Mfg. Co.,* 203 *N.J.Super.* 137, 143–44, 495 *A.*2d 1372 (App.Div.1985) (concluding that economic concerns underlying 1979 amendments did not necessitate rejection of outcome consistent with "remedial purpose and spirit of the act"). Thus, we are simply filling the void left by the Legislature's failure to define the phrase "recreational or social activities," mindful of "the axiomatic principle that the language of the work[ers'] compensation act must be liberally construed in favor of the claimant." *Close v. Kordulak Bros.,* 44 *N.J.* 589, 604, 210 *A.*2d 753 (1965). Under that principle, we conclude that when the Legislature excluded recreational and social activities from the workers' compensation scheme, it did not intend to shift the cost of compelled activities from employers to employees.

Therefore, when an employee establishes that his or her employer *required* participation in an activity of a recreational or social nature, courts should consider the activity as they would any other compensable work-related assignment. By contrast, recreational and social activities that the employer merely sponsors or encourages are precisely the type of activities that the Legislature intended to exclude from coverage. In those cases, the act requires the employee to establish that the activity is a regular incident of employment and provides some benefit to the employer beyond the improvement in employee health and morale.

### B.

Having determined that an employer actively brings an otherwise recreational or social activity within the scope of employment

by compelling participation or attendance, we address the related and equally important question of the standard that courts should apply when assessing an employee's allegation of compulsion.

Compulsion can take a number of forms. Larson, *supra*, § 22.04[2], at 22–20 to 22–21. When an employer directly commands an employee to engage in an activity, it is axiomatic that the employee has been compelled. However, considering the imbalance of power between the employer and employee, we cannot ignore the reality that indirect pressure on an employee can be as powerful as an explicit order. *See Lawrence v. Indus. Comm'n of Arizona*, 78 *Ariz.* 401, 281 *P.*2d 113, 115 (1955) (stressing that "[t]he degree of pressure which the employer must be shown to exert in order to find that he directed an employee in a given action must not be a requirement which ignores the realities of business"); *Begel v. Wisconsin Labor & Indus. Review Comm'n*, 246 *Wis.*2d 345, 631 *N.W.*2d 220, 226 (Ct.App.2001) (noting that "the inequality in power between the supervisor and employee makes it difficult for the employee to decline supervisor requests, however they are phrased").

 When an employee alleges indirect or implicit compulsion, we hold that the employee must demonstrate an objectively reasonable basis in fact for believing that the employer had compelled participation in the activity. Whether the employee's belief is objectively reasonable will depend largely on the employer's conduct and must be assessed on a case-by-case basis. Relevant factors include, but are not limited to, whether the employer directly solicits the employee's participation in the activity; whether the activity occurs on the employer's premises, during work hours, and in the presence of supervisors, executives, clients, or the like; and whether the employee's refusal to attend or participate exposes the employee to the risk of reduced wages or loss of employment. The absence of one factor is not fatal. As noted, that list is not exhaustive and other fact patterns may suggest compulsion. However, an employee's mere subjective impression of compulsion standing alone will not bring an activity within the

scope of employment. *Accord Crouch Funeral Home, Inc. v. Crouch,* 262 *Ark.* 417, 557 *S.W.*2d 392, 395 (1977) (concluding that employee's impression of compulsion was "too frail and flimsy" to serve as basis for recovery); *Shade v. Ayars & Ayars, Inc.,* 2 *Neb.App.* 730, 513 *N.W.*2d 881, 887 (1994) (finding employee's subjective belief that employer impliedly required attendance at company picnic insufficient to demonstrate compulsion in view of other testimony that event was voluntary).

## V.

With those principles in mind, we consider whether the Judge of Compensation erred in determining that Lozano's injury arose out of a "recreational activity" outside of the scope of employment. In categorizing Lozano's use of the go-cart as a recreational activity, the Judge of Compensation, unguided by our holding, did not address explicitly whether Lozano had an objectively reasonable belief that DeLuca had required him to drive the go-cart. The judge noted only that "[a]t first [Lozano] didn't want to get into the go-cart. He must have had a lot of fun; he ran off the track and into the truck, and he was dazed." From those observations, we cannot determine whether the judge found Lozano's claim of compulsion to be objectively reasonable. The fact that Lozano might have received some gratification from the ride does not preclude a fact-finder from concluding that Lozano reasonably believed that his supervisor had ordered him to drive the go-cart. Without stating an opinion on that issue, we note only that enjoyment and compulsion are not mutually exclusive.

Lozano urges us to determine, based on his uncontested testimony, that driving the go-cart was a compensable work activity. However, because neither the parties nor the compensation judge had the benefit of our interpretation of the statute, we remand the matter to the Division of Workers' Compensation for a new trial. We offer the following comments for guidance on remand.

We note that at the new trial Lozano might prevail in demonstrating that his operation of the go-cart was expressly compelled

and, therefore, a work activity as opposed to a recreational one. Supporting that contention is Lozano's undisputed testimony that he understood De Luca's insistence to "get in" the go-cart as an order that he "had to obey."

Alternatively, the judge might view Lozano's allegation as a claim of indirect or implicit compulsion. A number of facts, many of which were not adequately developed at trial, are relevant to determining whether Lozano's assessment of the situation was objectively reasonable. For example, the record indicates that Lozano was a general laborer, but does not reveal whether Lozano's assignments, prior to this incident, ever included tasks unrelated to respondent's work as a mason. In addition, the incident occurred in the presence of Borbas, respondent's customer for whom Lozano had been performing services. It remains for the fact finder to assess whether Lozano might have been more reluctant to question DeLuca because of the customer's presence. Further consideration also should be given to the fact that, although he had completed his assignment of constructing a stone wall, Lozano had no means of returning home because he relied on DeLuca for transportation to and from the workplace. Evidence that Lozano remained under DeLuca's direction while at the work site should be considered in tandem with the unresolved question of whether Lozano was paid for the time in which the incident occurred. Non-payment for the activity may be relevant but it is not dispositive.

Because respondent did not offer any testimony or otherwise challenge Lozano's allegation of compulsion, we do not know and will not speculate about what respondent might offer in rebuttal. Therefore, in the interest of fairness, we remand to the Division of Workers' Compensation to afford both parties the opportunity to develop the record in light of our interpretation of *N.J.S.A.* 34:15–7.

## VI.

For the foregoing reasons, we reverse the judgment of the Appellate Division and remand the matter to the Division of

Workers' Compensation for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—7.

*Opposed*—None.