NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

|  |  |  |
|---|---|---|
| MATRIX BORDENTOWN,<br>LOT 2, LLC, | : | TAX COURT OF NEW JERSEY |
|  | : |  |
|  | : | DOCKET NO. 013007-2019 |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| DIRECTOR, DIVISION OF<br>TAXATION, | : | Approved for Publication<br>In the New Jersey<br>Tax Court Reports |
|  | : |  |
| Defendant. | : |  |
|  | : |  |
|  | : |  |

Decided: March 25, 2025

Joseph G. Buro for plaintiff (Zipp & Tannenbaum, LLC, attorneys).

Anthony D. Tancini for defendant (Matthew J. Platkin, Attorney General of New Jersey, attorney).

BEDRIN MURRAY, J.T.C. *

I.     Introduction

Before the court is plaintiff's motion for summary judgment against defendant, Director, Division of Taxation, and defendant's cross-motion for summary judgment dismissing plaintiff's complaint.   The novel issue to be determined is the interpretation of a subsection of N.J.S.A. 46:15-7.2, a realty transfer fee commonly referred to as the "mansion tax," which imposes a fee on the grantee of a deed in certain real property transfers over $1,000,000.  The fee amounts

---

*Judges Brennan and Duffy were recused from consideration of this matter.

to 1% of the consideration stated on the deed and must be tendered when the deed is presented to the county clerk for recording. The fee is termed an "additional" fee because it is in addition to the realty transfer fees imposed on the grantor of a deed upon recordation, with certain exceptions, under N.J.S.A. 46:15-7.

In the matter at bar, plaintiff challenges the final determination of defendant, Director, Division of Taxation, denying plaintiff's claim for a refund of the realty transfer fee it was required to pay in order to have the deed recorded. In short, the fee was imposed under N.J.S.A. 46:15-7(a)(2)(a), which applies to real property transfers over $1,000,000 of "farm property (regular)" provided "the property includes a building or structure intended or suited for residential use . . . ." Ibid.

The legal issue in this matter turns on the interpretation of the phrase "building or structure intended or suited for residential use." There is no dispute that on the date the subject property was transferred to plaintiff, a two-story house sat on the land. Previously used as a residence, the house was vacant and uninhabitable at the time of plaintiff's acquisition of the subject property. Plaintiff contends that the condition of the dwelling made it unsuited for residential use. Further, plaintiff maintains that the phrase "intended for residential use" refers to the intention of the purchaser of the property. In this case, plaintiff's intent was to demolish the structure and convert it and its adjoining parcels to industrial use.[1] Defendant, conversely,

---

[1] The subject house was demolished sometime after the closing of title.

2

contends that the phrase "building or structure intended or suited for residential use" refers to what the structure was intended for and suited for at the time of its construction. For the reasons set forth more fully below, the court concludes that the plain language of the statute militates in favor of defendant. As such, summary judgment is granted in favor of defendant, and plaintiff's complaint is dismissed with prejudice.

II.     Findings of Fact and Procedural Posture

The material facts in this matter are not in dispute. On November 19, 2018, plaintiff acquired title to property designated as Block 130, Lot 2 on the municipal tax map of the Township of Bordentown, consisting of approximately forty-six acres of land. The deed consideration was $4,703,160. Prior to the closing of title, an entity affiliated with plaintiff obtained preliminary and final site plan approval from the Planning Board of Bordentown Township ("Planning Board") to develop the property for industrial use and to construct a warehouse building thereon. The Planning Board's amended resolution granting approval of the application cites, in part, the applicant's request "to remove the existing structures on the subject property, including barns and a residential dwelling." The Planning Board's approval was granted subject to twenty-three conditions.

At the time of the transfer of title to plaintiff, the property consisted of three separate subparcels, each with its own property classification. The largest subparcel

3

consisted of approximately forty-five acres and was classified as 3B – Farmland Qualified, indicating that it received preferential tax treatment due to it being actively devoted to agricultural or horticultural use under the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 to -23.23. The adjoining parcel, one-half acre in size, was classified as 3A – Farmland Regular. This parcel contained a house, also described by plaintiff as a farmhouse, previously used as a residence. At the time of closing, the structure was vacant and partially, if not fully, gutted.[2] The assessment on this parcel was $230,200, with the improvement, or house, assessed at $142,200. See Property MOD4 Record, July 26, 2019. The third parcel was a 900 square foot parcel containing a cellular tower and classified as 4A – Commercial.

On or about November 26, 2018, plaintiff attempted to record the deed with the Clerk of Burlington County. The Clerk's Office would not record the deed without plaintiff remitting 1% of the deed consideration, or $47,031, based on the designation of the half-acre parcel with the house upon it as 3A – Farmland Regular. On or about January 8, 2019, plaintiff remitted the 1% fee to the Clerk of Burlington County. The deed was recorded on January 11, 2019. On or about February 5, 2019,

---

[2] It is noted that defendant does not dispute that the house was vacant and in the condition depicted in plaintiff's photographic exhibits, which include one interior view of a gutted area. Defendant, however, does dispute plaintiff's contention that there was asbestos throughout the structure. The court does not find the issue of whether asbestos was present in the structure to be a material fact but mentions it for the sake of thoroughness. Moreover, the parties agree there are no material facts in dispute.

plaintiff filed a claim with defendant for a refund of the realty transfer fee. On July 5, 2019, defendant issued a denial notice to plaintiff, stating that "[t]his property included a structure intended for residential use, which is why your claim for refund is denied." On September 5, 2019, plaintiff initiated the matter at bar, seeking relief from defendant's determination.

III.    Summary Judgment Standard

Applications for summary judgment are governed by R. 4:46-2, which provides in pertinent part that:

> The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
>
> [R. 4:46-2(c).]

In Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520 (1995), the Court reframed the standard for summary review by holding that:

> [T]he determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Id. at 523.]

5

In the matter before the court, there is no genuine issue of material fact that would thwart a summary determination. As aptly set forth in the parties' briefs and at oral argument, the question presented is strictly a legal one. Thus, the matter is ripe for summary judgment.

IV.    Conclusions of Law

As the issue before the court has not been previously decided, the court begins with a brief legislative history of N.J.S.A. 46:15-7.2. On June 30, 2004, the New Jersey Legislature enacted L. 2004, c. 66, § 8 (C. 46:15-7.2) which imposed a new, 1% fee on the transfer of real property "zoned for residential use, whether improved or not" with a deed consideration greater than $1,000,000. The new fee was assessed to the deed grantee. Ibid.

The law was amended and supplemented by L. 2005, c. 19, enacted January 19, 2005. The purpose of the amendment was to limit the type of property subject to the fee, as the state was collecting unanticipated revenue from the transfer of unimproved lots with a deed consideration greater than $1,000,000. A. Appropriations Comm. Statement to A. 3302 1 (Oct. 21, 2004). The Assembly amendment removed the language in § 8, transfer of real property "zoned for residential use, whether improved or not," and replaced it with transfer of real property "upon which there is a building or structure intended or suited for residential use for which the consideration is more than $1,000,000." Ibid. The New

6

Jersey Senate further refined the application of Assembly Bill No. 3302 by enumerating the specific classes of property subject to the 1% grantee's fee on transfers in excess of $1,000,000. S. Budget and Appropriations Comm. Statement to First Reprint of A. 3302 1 (Dec. 6, 2004). In short, the Legislature replaced zoning status with property classification as the determinant of those transfers subject to the added 1% fee. Ibid. As enacted, the amendment to Section 8 of L. 2004, c. 66 (C. 46:15-7.2) provided, in pertinent part:

> 8. a. In addition to all other fees imposed under [N.J.S.A. 46:15-5, et seq.], there is imposed a fee upon the grantee of a deed for the transfer of real property:
> (1) that is classified pursuant to the requirements of N.J.A.C. 18:12-2.2 as Class 2 "residential";
> (2) (a) that includes property classified pursuant to the requirements of N.J.A.C. 18:12-2.2 as Class 3A: "farm property (regular)" but only if the property includes a building or structure intended or suited for residential use, and
> (b) any other real property, regardless of class, that is effectively transferred to the same grantee in conjunction with the property described in subparagraph (a) of this paragraph; or
> (3) that is a cooperative unit as defined in [N.J.S.A. 46:8D-3(f)] that is transferred for consideration in excess of $1,000,000 recited in the deed, which fee shall be an amount equal to 1 percent of the entire amount of such consideration, which fee shall be collected by the county recording officer at the time the deed is offered for recording . . . .
>
> [L. 2005, c. 19.] (emphasis added).

The 2005 amendment to N.J.S.A. 46:15-7.2 implicitly exempted purchases of vacant land, hotels, apartment houses, multiple dwelling houses, and health care facilities from the 1% fee. Legis. Fiscal Estimate, Second Reprint, for A. 3302 1-2 (Dec. 30, 2004). In addition, the amendment explicitly exempted charitable entities with federal tax-exempt status under I.R.C. § 501(c)(3). Id. at 2. See N.J.S.A. 46:15-7.2(b)(1).

On July 8, 2006, a third amendment to N.J.S.A. 46:15-7.2 was enacted. L. 2006, c. 33 effectively expanded the reach of N.J.S.A. 46:15-7.2(a) by adding transfers of Class 4A "commercial properties" to the types of transfers subject to the 1% realty transfer fee. See N.J.S.A. 46:15-7.2(a)(4).

In the instant matter, the subject property consisted of three subparcels: (1) the half-acre parcel with the farmhouse classified as 3A Farm Regular (Lot 2), (2) an approximately 45-acre parcel classified as 3B Farm Qualified (Lot 2, qualified farm), and (3) a 900 square foot parcel containing a cell tower (Lot 2, T01). Each of the three subparcels was separately assessed, although together they were known as Block 130, Lot 2. The two latter parcels, individually, were not subject to the 1% realty transfer fee. However, when the property transferred to plaintiff, all three subparcels were transferred together on one deed for a total consideration of $4,703,160. The inclusion of the half-acre lot with the farmhouse triggered the 1% fee on the entire transaction under N.J.S.A. 46:15-7.2(a)(2)(b), which imposes the

8

fee on "any other real property, regardless of class, that is effectively transferred to the same grantee in conjunction with [the 3A farm property with the farmhouse]. Ibid.

The issue before the court is confined to the proper interpretation of the language employed in N.J.S.A. 46:15-7.2(a)(2)(a), underlined below, that imposes the 1% fee on property classified as Class 3A: "farm property (regular)" but only if the property includes a building or structure intended or suited for residential use. Plaintiff does not dispute that the classification of the subject parcel as Class 3A: "farm property (regular)" was proper at the time of transfer of title. However, plaintiff contends that it did not intend to use the farmhouse as a residence at the time of purchase of the property, as evidenced by its application for a preliminary and final major site plan prior to the transfer of title. As mentioned above, the application sought, among other things, to remove the existing structures on the property, including a "residential dwelling." Plaintiff construes the word "intended" to mean the intent of the purchaser with respect to the structure at the time of closing of title. As for whether the structure was suited for residential use, plaintiff contends that this, too, is determined as of the closing date. Plaintiff uses a subjective standard in assessing suitability, asserting the house, vacant and dilapidated, was not suited for residential use at the time of the closing.

9

Defendant, on the other hand, maintains that the term "intended or suited for residential use" refers to how the structure was intended to be used at the time of its construction, or its suitability for residential use at the time of its construction. This interpretation would subject the property to the 1% fee.

"The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." Di Prospero v. Penn, 183 N.J. 477, 492 (2005). "We ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (citations omitted).

When examining the statutory language at issue, it is useful to separate the key words "intended" and "suited for." In doing so, the court finds the ordinary meaning of "a building or structure intended . . . for residential use" to be a building or structure meant for residential use. N.J.S.A. 46:15-7.2(a)(2)(a). This is the interpretation used by defendant in denying plaintiff's refund claim. The word "intended" relates to the building or structure, not to the intent of the purchaser of the property, as plaintiff asserts. Moreover, the statute uses the words "a building or structure" instead of simply using the word "house." Ibid. A building intended, or meant, for residential use is generally a house. However, "a building or structure . . . suited for residential use" is not necessarily a house. Ibid. It can be a structure with another purpose that is also suited for use as a residence. Similarly, the word

10

"suited" relates to the building or structure, and whether such structure was suited for residential use. Hence, the use of the words "intended or suited for residential use" relate to and differentiate the type of building or structure included on the 3A farm property. Ibid.

In contrast, plaintiff's interpretation of the phrase "a building or structure intended . . . for residential use" goes well beyond the ordinary meaning of the words. Ibid. Plaintiff contends that it is the deed grantee's intent with regard to the structure that determines if the 1% fee is due. Since plaintiff's intent was to demolish the house, the fee should not have been imposed. However, the plain language of the statute does not support such an interpretation. It is not the domain of the court to "rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488 (2002). "We cannot 'write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment . . . .'" DiProspero, 183 N.J. at 492 (quoting Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952)). It is not reasonable to conclude that the Legislature would intend for the application of the 1% fee on Class 3A farm property to be decided based on subjective measurements, namely the intent of the deed grantee as to the fate of the structure, or the grantee's evaluation of the

11

appropriateness, or suitability, of the structure for habitation. As expressed by defendant in oral argument, "Beauty is in the eye of the beholder."

On the other hand, the court does not agree with defendant that the issues of how the structure was intended to be used and its suitability for residential use are determined as of the time of its construction. Instead, the court concludes that these issues are determined at the time title is closed. In the present case, at the time of closing, a farmhouse stood on the 3A farm property that was intended or meant to be a residence. What the purchaser of the property intended to do with it after the transfer of title is immaterial. Likewise, the purchaser's assessment of the property is wholly subjective. While plaintiff viewed the structure as a negative value on the land, as urged at oral argument, another purchaser might view the house as a worthwhile renovation project.

"When 'the statutory language is clear and unambiguous . . .' as it is in this matter, the court need not 'resort to extrinsic interpretative aids.'" Lozano v. Frank DeLuca Const.,178 N.J. 513, 522 (2004) (quoting In re Passaic County Utils. Auth., 164 N.J. 270, 299 (2000). Nevertheless, an inquiry into the legislative intent resulting in the enactment of the statute at bar reveals only that it was a means of raising revenue for general State purposes, and would "help[] to balance the State budget without raising sales or income taxes." Governor's Statement to A. 3115 (June 30, 2004).

Moreover, the Director, Division of Taxation's ("Director") July 5, 2019 determination denying plaintiff's refund claim comports with the plain language of N.J.S.A. 46:15-7.2(a)(2)(a). It is an established principle that the Director's interpretation of tax statutes carries a presumption of validity. Ridgewood Commons Group v. Dir., Div. of Taxation, 25 N.J. Tax 188, 195 (Tax 2009). In Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 327 (1984), our Supreme Court recognized that the courts should treat the Director's implementation of tax statutes with "great respect." "[T]he agency's interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable." Ibid. The court concludes that in the present matter, the Director's interpretation of the applicable statute is reasonable and proper.

Based on the foregoing, the court affirms defendant's denial of plaintiff's claim for a refund of the 1% realty transfer fee. Defendant's cross-motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. An Order and Final Judgment dismissing plaintiff's complaint with prejudice will be entered accordingly.