NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1661-18T2

LIBERTARIANS FOR
TRANSPARENT GOVERNMENT,
a NJ Nonprofit Corporation,

Plaintiff-Respondent,

v.

CUMBERLAND COUNTY and
BLAKE HETHERINGTON in her
official capacity as Custodian of
Records for Cumberland County,

Defendants-Appellants.

_____

> **APPROVED FOR PUBLICATION**
>
> **September 4, 2020**
>
> **APPELLATE DIVISION**

Argued November 13, 2019 – Decided September 4, 2020

Before Judges Fisher, Accurso and Gilson.

On appeal from the Superior Court of New Jersey,
Law Division, Cumberland County, Docket No.
L-0609-18.

Melissa D. Strickland, Assistant County Counsel,
argued the cause for appellants (Theodore E. Baker,
County Counsel, attorney; Melissa D. Strickland, on
the brief).

Michael J. Zoller argued the cause for respondent
(Pashman Stein Walder Hayden, PC, attorneys; CJ
Griffin, of counsel and on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

The central issue on this appeal is whether a settlement agreement between defendant Cumberland County and a former County employee resolving a preliminary notice of disciplinary action (PNDA) against the employee is a government record under N.J.S.A. 47:1A-10 (section 10) of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, the exemption for personnel records. We hold a settlement agreement resolving an internal disciplinary action against a public employee is not classified as a government record under OPRA, but instead is a personnel record exempt from disclosure under section 10 of the statute. We, accordingly, reverse the trial court order that held to the contrary, and remand for the court to consider whether plaintiff Libertarians for Transparent Government is entitled to the settlement agreement, either in whole or in part, under the common law right of access to public records, see Bergen Cty. Improvement Auth. v. N. Jersey Media Grp., Inc., 370 N.J. Super. 504, 520 (App. Div. 2004).

The essential facts are easily summarized. Libertarians obtained minutes of the March 12, 2018 Board Meeting of the Police and Fireman's Retirement System, reflecting the Board's consideration of an application for special retirement by Tyrone Ellis, a corrections officer employed by Cumberland

County at its correctional facility. The minutes state that Ellis was charged in a PNDA seeking his termination with conduct unbecoming and other sufficient causes following an internal affairs investigation in which Ellis admitted to engaging in sex with two inmates and bringing them contraband, including bras, underwear, cigarettes and a cellphone. He also admitted to using an alias that allowed him to correspond with and provide money to one of the inmates through JPAY, a service that allows individuals to transfer money to inmates.

The minutes reflect that Ellis resigned while the disciplinary action was pending. According to the minutes, when Ellis learned the County intended to continue to pursue the disciplinary charges, he agreed to cooperate in an investigation of other suspected acts of improper fraternization, leading to charges against four other officers. "As a result of his cooperation, Cumberland County agreed to dismiss the disciplinary charges and permit Mr. Ellis to retire in good standing" as reflected in a March 1, 2017 settlement agreement between Ellis and the County. The PFRS Board determined Ellis' misconduct required a partial forfeiture of his service and salary, and approved his service retirement less that partial forfeiture.

Having obtained those minutes, Libertarians made an OPRA request to the County for the PNDA issued to Ellis, a copy of the settlement agreement, and Ellis' "name, title, position, salary, length of service, date of separation

and the reason therefor" in accordance with section 10. County counsel timely responded by advising that section 10 prohibited access to the PNDA, but in accordance with the exception in that section for the specific information Libertarians sought, provided Ellis' name, his title, his yearly salary of $71,575, his hire date of March 6, 1991, and separation date of February 28, 2017. County counsel advised Ellis "was charged with a disciplinary infraction and was terminated."

County counsel also confirmed the existence of "an agreement with respect to the disciplinary action resulting in separation from employment." He advised the County could not

> unfortunately, make additional information available as personnel records, including disciplinary records, are confidential. The settlement agreement pertains to a disciplinary matter and does not fall under the exception with respect to settlement agreements pertaining to outside litigation under the case of Burnett v. Gloucester County, 415 N.J. Super. 506 (App. Div. 2010). See too, South Jersey Publishing Company, Inc. v. New Jersey Expressway Authority, 124 N.J. 478 (1991). That case also would preclude the release of that type of information.

County counsel invited Libertarians to provide any "additional information or authority which you believe entitles you to this information," but advised that "[a]t this point," the County was constrained to limit disclosure to the information provided.

A-1661-18T2

Libertarians filed this OPRA action seeking access to the settlement agreement alleging "it is not wholly exempt under OPRA" and that it should "[a]t a minimum" have been produced in redacted form. Libertarians also sought a ruling that the County violated section 10 by misrepresenting the reason for Ellis' separation, indicating he was "terminated" instead of allowed to retire in good standing. Alternatively, Libertarians demanded the agreement under the common law right of access, alleging that "[m]uch of the details about Ellis' misconduct and his separation from employment are already known to the public" through the PFRS board minutes and a lawsuit filed in federal court against the County by an inmate claiming Ellis forced her into sex, Cantoni v. Cumberland County, Civ. No. 17-7893 (NHL)(AMD) 2018, U.S. Dist. LEXIS 11269 (D.N.J. July 6, 2018).

After hearing argument, but before review of the settlement agreement, the court rejected the County's position that the agreement was a personnel record exempted from disclosure by section 10. Relying on those cases holding that agreements settling claims and lawsuits between claimants and governmental entities constitute government records accessible under OPRA, see Burnett, 415 N.J. Super. at 512, and Asbury Park Press v. County of Monmouth, 406 N.J. Super. 1, 10 (App. Div. 2009), the court ruled the settlement agreement between Ellis and the County was a government record

subject to disclosure with necessary redactions. The court specifically rejected the County's argument distinguishing those cases because the settlement agreements at issue there resolved lawsuits, not internal disciplinary actions, deeming it not "persuasive."

Specifically, the court stated:

> ultimately what I see here is the county couching this settlement agreement as a personnel [record] in its entirety. Which I think is an unfair characterization of what the settlement agreement is. Is it likely that there's some personnel information in that record that should be redacted? Yes, it's certainly likely. But the public, under OPRA, should be entitled to and is entitled to information concerning especially financial aspects of this arrangement.

The court expressed the concern that

> if we give a document a certain name, then what happens is the government will attempt to argue that because we named it a settlement of a personnel matter or whatever we want to call it, the government will seek to limit the disclosure of the document as a governmental record, which flies in the face of what OPRA is seeking to accomplish.

It also found that the County's alleged misrepresentation of the true reason for Ellis' separation "in and of itself, [was] cause for [the] court to address at least that inconsistency, by releasing the portions of this governmental record."

The court also rejected the County's position that the exemption for ongoing investigations, N.J.S.A. 47:1A-3(a), also shielded the settlement

agreement from disclosure under OPRA.  Acknowledging the County's representation that the investigation revealed in the minutes of the PFRS Board, with which Ellis had agreed to cooperate, included a criminal investigation by the County prosecutor's office,[1] which was then still ongoing, the court ruled that "if there's information in there that's going to interfere with the investigation of the prosecutor's office, it should not be made public."

The court advised the parties it would perform an in camera review of the document, saying it "suspect[ed]" it would "further confirm this court's opinion that this, in fact, is a governmental record, with some personnel information contained therein."  Although declining to make its ruling final pending its in camera review of the document, the court nevertheless found Libertarians a prevailing party entitled to counsel fees.

---

[1] We include reference to the criminal investigation, which was not mentioned in the PFRS Board minutes, because it was included in that part of the trial transcript that the trial court directed not be sealed. See R. 1:2-1. See also R. 1:38-1A. We are not aware of whether the existence of that criminal investigation was public knowledge before it was discussed on the record in this matter. Trial courts should obviously take care to avoid compromising ongoing criminal investigations in OPRA proceedings, hearing argument by the public entity as part of the in camera review, if necessary. See Hartz Mountain Indus., Inc. v. N.J. Sports & Exposition Auth., 369 N.J. Super. 175, 183 (App. Div. 2004). We further note that the parties learned when the County ordered the transcript that the entire record of the proceeding had been sealed, requiring a motion to this court to unseal it to permit prosecution of the appeal. OPRA proceedings should, of course, be conducted in open court in accordance with Rule 1:2, and sealing of any portion of the transcript of the proceeding determined in accordance with Rules 1:2-2 and 1:38-11.

Following an hour recess to permit in camera review of the settlement agreement, the court advised the parties on the record:

> that probably about 90 percent of the agreement . . . falls into the category [previously] discussed, the category being the criminal investigation or particularly the disciplinary issues that . . . involve Mr. Ellis. That does mean there's about 10 percent or so of the information I do find to be appropriate to be released.

After reviewing the specific redactions on the record, the court concluded:

> So, essentially, when it's all said and done, what this court did was leave in there the fact that Mr. Ellis submitted his resignation, that Mr. Ellis is going to cooperate in some fashion. And that assuming he cooperates in that fashion, then he will be permitted to retire in good standing. That's the portion that I find to be subject to public inspection.

The parties subsequently entered into a consent order for fees in the sum of $10,000, which they agreed to stay pending the County's appeal. The court filed an amplification of its oral opinion, reiterating its finding that the settlement agreement did not qualify as a personnel record. The court also found that because the agreement predated commencement of any investigation, the exemption in OPRA for investigations in progress, N.J.S.A. 47:1A-3(a), did not apply, citing Serrano v. South Brunswick Township, 358 N.J. Super. 352, 366-67 (App. Div. 2003). The court stayed its order for

access, releasing the redacted document only to counsel for Libertarians to permit it to defend an anticipated appeal in this court.

The County appeals, reprising its arguments to the trial court. Libertarians counters that settlement agreements are not "categorically exempt" personnel records, and that the trial court did not err in concluding the settlement agreement "was not wholly exempt from access" and properly released it as redacted.

Our review of the trial court's determination that the settlement agreement between Ellis and the County is a government record under OPRA is de novo. K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337, 349 (App. Div. 2011). The Supreme Court has stated on more than one occasion that "[t]he Legislature enacted OPRA 'to promote transparency in the operation of government.'" Paff v. Ocean Cty. Prosecutor's Office, 235 N.J. 1, 16 (2018) (quoting Carter v. Doe (In re N.J. Firemen's Ass'n Obligation), 230 N.J. 258, 276 (2017)). "With broad public access to information about how state and local governments operate, citizens and the media can play a watchful role in curbing wasteful government spending and guarding against corruption and misconduct." Burnett v. County of Bergen, 198 N.J. 408, 414 (2009).

OPRA advances that policy "by broadly defining 'government records,' N.J.S.A. 47:1A-1.1, and by publicly declaring that they shall be accessible,

N.J.S.A. 47:1A-1." Kovalcik v. Somerset Cty. Prosecutor's Office, 206 N.J. 581, 588 (2011). As the Court has explained, "[n]otwithstanding that sweeping declaration, the right to disclosure is not unlimited, because as [the Court has] previously found, OPRA itself makes plain that 'the public's right of access [is] not absolute.'" Ibid. (quoting Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 284 (2009)).

In addition to the more than twenty different categories of information within government records the statute expressly deems confidential and thus exempt from public access, N.J.S.A. 47:1A-1.1, OPRA excludes personnel and pension records from the definition of government records, with limited exceptions, only one of which is at issue here.[2] Specifically, section 10 of the statute provides in its entirety:

> Personnel or pension records not considered government records; exceptions
>
> Notwithstanding the provisions of P.L. 1963, c. 73 (C. 47:1A-1 et seq.) or any other law to the contrary, the personnel or pension records of any individual in the possession of a public agency, including but not

---

[2] The County provided Libertarians the information contained in the first exception, the one at issue here, which excepts from the exemption for personnel records, "an individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefore, and the amount and type of any pension received," in its initial response to the OPRA request. The County also offered on the return date to produce payroll records reflecting the same information.

limited to records relating to any grievance filed by or against an individual, shall not be considered a government record and shall not be made available for public access, except that:

an individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefor, and the amount and type of any pension received shall be a government record;

personnel or pension records of any individual shall be accessible when required to be disclosed by another law, when disclosure is essential to the performance of official duties of a person duly authorized by this State or the United States, or when authorized by an individual in interest; and

data contained in information which disclose conformity with specific experiential, educational or medical qualifications required for government employment or for receipt of a public pension, but not including any detailed medical or psychological information, shall be a government record.

[N.J.S.A. 47:1A-10.]

As the Court has explained, "[t]he Legislature has declared in this provision that personnel records are, by definition, not classified as government records at all; any document that qualifies as a personnel record is therefore not subject to being disclosed notwithstanding the other provisions of the statute." Kovalcik, 206 N.J. at 592. Unfortunately, however, OPRA "does not define precisely what information is covered by the phrase 'personnel

record,'" and the "case law interpreting this provision is sparse." <u>McGee v. Township of East Amwell</u>, 416 N.J. Super. 602, 615 (App. Div. 2010).

We have little doubt that the PNDA — the Preliminary Notice of Disciplinary Action — which Libertarians initially sought from the County, but did not pursue in this action, would qualify as a personnel record under section 10. The plain language of that section, that "<u>the personnel . . . records of any individual</u> in the possession of a public agency, <u>including</u> but not limited to <u>records</u> <u>relating to any grievance filed</u> by or <u>against an individual</u>, shall not be considered a government record," does not admit any other interpretation. "When the language in a statute 'is clear and unambiguous, and susceptible to only one interpretation,'" courts should not look elsewhere to glean its meaning. <u>Burnett</u>, 198 N.J. at 421 (quoting <u>Lozano v. Frank DeLuca Constr.</u>, 178 N.J. 513, 522 (2004)). Instead, we are to "apply the statute as written." <u>Lozano</u>, 178 N.J. at 522 (quoting <u>In re Passaic Cty. Utils. Auth.</u>, 164 N.J. 270, 299 (2000)).

The Government Records Council considers records involving employee discipline or investigations into employee misconduct as personnel records exempt from disclosure under OPRA.[3] <u>See</u> <u>Rick Moreno v. Bor. of Ho-Ho-</u>

---

[3] Libertarians relies on another GRC case, <u>Ungaro v. Town of Dover</u>, GRC Complaint No. 2008-115 (November 2009), to support its argument that the

<u>Kus</u>, GRC Complaint No. 2003-110 (March 2004) (internal reprimands of a municipal police officer); <u>Allen v. County of Warren</u>, GRC Complaint No. 2003-155 (March 2004) (harassment complaint filed against an employee). Although the GRC's decisions are not binding on us or any court, N.J.S.A. 47:1A-7(e), <u>Paff v. Galloway Township</u>, 229 N.J. 340, 357 (2017), we nevertheless accord some weight to the GRC's interpretation of OPRA. <u>McGee</u>, 416 N.J. Super. at 616.  Its determination that a public employee's disciplinary records are personnel records not subject to public access under the statute is reasonable and consistent with the statutory language.

If the disciplinary records themselves are exempt from disclosure under section 10, we have difficulty understanding why an internal settlement agreement resolving disciplinary charges, which often involves an employee accepting discipline, would not similarly be considered a personnel record exempt from disclosure.  Indeed, we expect that some employees agree to settle disciplinary charges, at least in part, to avoid public disclosure of the charges.  We have held that settlement agreements by public entities resolving

---

GRC considers settlement agreements government records.  <u>Ungaro</u>, however, is clearly distinguishable as the GRC ruled only that Dover's reliance on a confidentiality clause in a settlement agreement between the municipality and its business administrator, would not protect the document from disclosure under OPRA, because the statute has no exemption for confidentiality clauses. Moreover, <u>Ungaro</u> did not involve the resolution of an internal disciplinary action brought by a public agency against its employee, as is the case here.

A-1661-18T2

civil litigation are unequivocally public records under OPRA that must be disclosed upon request. See e.g., Asbury Park Press, 406 N.J. Super. at 9. But those cases involved settlements of lawsuits, as in Asbury Park Press, or monetary claims against public agencies, as in Burnett, for which there is no exception in OPRA.

As we explained in Asbury Park Press:

> Lawsuits are filed in a public forum. One of our basic Rules of Court requires that court proceedings be conducted openly unless otherwise provided by rule or statute. R. 1:2-1. Reviewing a history of open government, our Supreme Court has described "open judicial proceedings as the cornerstone of a democratic society." Tarus v. Borough of Pine Hill, 189 N.J. 497, 507 (2007) (citing 1 Jeremy Bentham, Rationale of Judicial Evidence 524 (London, 1827)). Privacy interests give way to the public's right to know the business of the courts, with exceptions not relevant here primarily applicable in the Family Division.

[Asbury Park Press, 406 N.J. Super. at 9.]

Asbury Park Press involved a sex discrimination, sexual harassment, retaliation, and hostile work environment suit filed in the Law Division by a county employee against the freeholders and five individually named county employees. Id. at 4. Two years after the suit was filed, it settled. Id. at 4-5. The parties agreed their settlement agreement would remain confidential, and

14

it was not filed or incorporated in a judgment.  Id. at 5.  The only court filing was a one-line stipulation of dismissal.  Ibid.

When the Asbury Park Press and John Paff sued to compel release of the agreement under OPRA, the trial court agreed with Monmouth County that the exclusion in the definitional section of the statute for "information generated by or on behalf of public employers or public employees in connection with any sexual harassment complaint filed with a public employer," N.J.S.A. 47:1A-1.1, precluded release of the settlement agreement.  Id. at 8.  We reversed.  We held "[t]he plain language of the statute limits the exclusion to sexual harassment complaints 'filed with a public employer.'"  Ibid.

Because "Melnick's complaint was filed in the Superior Court, not with Monmouth County," we found Melnick's complaint, and the agreement memorializing her settlement of it, did "not come within the plain language of the exclusion."  Ibid.  We wrote that

> [b]y referring in OPRA to sexual harassment complaints "filed with a public employer," the Legislature distinguished between internal complaints addressed only to the employer and those filed as a matter of public record.  The distinction makes sense and continues to value a policy of encouraging victims to come forward.  The Legislature gave victims the opportunity to bring sexual harassment complaints to their public employers without public access.  At the same time, the Legislature did not interfere with the long-standing governmental policy of conducting judicial affairs openly to the public.

[Id. at 10.]

Although the exemption for sexual harassment complaints filed with an employer and the total exclusion of personnel records are in different sections of the statute, the treatment of sexual harassment complaints in OPRA is instructive here. As the Court has noted in construing other exemptions in OPRA, "[o]ur job is to understand the intent that animated those exemptions and to give it effect." Gilleran v. Bloomfield, 227 N.J. 159, 172 (2016). We don't do so by "view[ing] the statutory words in isolation but 'in context with related provisions so as to give sense to the legislation as a whole.'" Ibid. (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012)).

Viewed together, the exemption of personnel records in section 10 and the exclusion of "information generated by or on behalf of public employers or public employees in connection with any sexual harassment complaint filed with a public employer," in the definitional section of the statute, N.J.S.A. 47:1A-1.1, "advance a discernible public policy," ibid., in OPRA to differentiate between internal records maintained by a governmental entity relating to employee personnel matters, be it disciplinary records, or sexual harassment complaints and investigations, and the public airing of such matters in a civil lawsuit. OPRA expressly exempts only the former from disclosure, not the latter. Thus, the statute provides no right of access to

internal personnel records, including those related to disciplinary infractions or sexual harassment allegations, while requiring disclosure of such records when one side or the other advances the matter out of the internal realm of the public agency by filing a lawsuit.

As we noted in Asbury Park Press,

> the Legislature struck a balance in OPRA between the competing interests of privacy and open government. It excluded from the reach of OPRA those complaints of sexual harassment that are filed only with the public employer and do not enter into a public forum, such as the courts. The Legislature did not undertake to assure privacy when an alleged victim of sexual harassment chooses to seek redress in the courts.

> [406 N.J. Super. at 11.]

Neither Asbury Park Press nor Burnett, 415 N.J. Super. at 512, also relied on by the trial court but which did not involve the personnel records exemption or a claim by an employee, provides support for finding Libertarians has a right of access under OPRA to the settlement agreement resolving Cumberland County's employee-related disciplinary charges against Ellis, which charges were resolved internally within the public agency. Although this matter and Asbury Park Press both involved a request to access a settlement agreement entered into by a public agency, that is the extent of their commonality. Settlement agreements by public agencies to resolve civil suits, including sex harassment suits by employees, are accessible under OPRA.

<u>Ibid.</u>  Settlement agreements by public agencies to resolve internal disciplinary charges or internal sexual harassment complaints are not accessible under OPRA.  N.J.S.A. 47:1A-1.1, 10.

We do not share the trial court's concern that a ruling permitting public agencies to shield settlement agreements resolving internal disciplinary charges will result in the improper characterization of other settlements as agreements resolving "personnel" matters.  We, of course, expect government agencies to comply with law and "turn square corners" in doing so.  <u>See</u> <u>Dolente v. Borough of Pine Hill</u>, 313 N.J. Super. 410, 418 (App. Div. 1998). Additionally, in camera review of challenged documents permits both the GRC and the Law Division to quickly and efficiently test the government's claim that a document is not publicly accessible under OPRA.  <u>See</u> N.J.S.A. 47:1A-7(f); <u>Paff v. N.J. Dept. of Labor</u>, 379 N.J. Super. 346, 355 (App. Div. 2005); <u>MAG Entm't, LLC v. Div. of Alcoholic Beverage Control</u>, 375 N.J. Super. 534, 551 (App. Div. 2005).

We have considered whether the first exception to section 10's exemption of personnel records from the definition of government record, that "an individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefor, and the amount and type of any pension received shall be a government record," required the County to permit

Libertarians access to the settlement agreement redacted to disclose the excepted information. Although we acknowledge the matter is not altogether free from doubt, we conclude OPRA does not generally require government agencies to make exempt personnel and pension records accessible in redacted form.

Our reasons are twofold, the language of the statute and the history of the exception. First, section 10 states plainly that the personnel and pension records of employees "shall not be considered a government record and shall not be made available for public access," N.J.S.A. 47:1A-10, differentiating them from government records that contain information deemed confidential by N.J.S.A. 47:1A-1.1. See Kovalcik, 206 N.J. at 592 (explaining that because "[t]he Legislature has declared in [section 10] that personnel records are, by definition, not classified as government records at all; any document that qualifies as a personnel record is therefore not subject to being disclosed notwithstanding the other provisions of the statute").

In contrast, government records containing information included in one of the more than twenty categories of information deemed confidential in N.J.S.A. 47:1A-1.1, are to be made available for public access redacted by the custodian in accordance with N.J.S.A. 47:1A-5(g), which provides:

> If the custodian of a government record asserts that part of a particular record is exempt from public

> access pursuant to [OPRA], the custodian shall delete or excise from a copy of the record that portion which the custodian asserts is exempt from access and shall promptly permit access to the remainder of the record.

If documents fairly qualifying as personnel or pension records must be made publicly accessible, redacted to include only the information included in the first exception to section 10, that is the "individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefor, and the amount and type of any pension received," they will have been effectively converted to "government[al] record[s], with some personnel information contained therein," which can be redacted in accordance with N.J.S.A. 47:1A-5(g).

That was the approach the trial judge took, and that's how he referred to the settlement agreement resolving Ellis' internal disciplinary charges. The problem, of course, from the perspective of a statutory analysis, is that it makes section 10 and its exceptions superfluous, which courts are generally advised against doing in attempting to derive legislative intent. See In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 274 (2017) (noting "legislative language must not, if reasonably avoidable, be found to be inoperative, superfluous or meaningless") (quoting State v. Regis, 208 N.J. 439, 449 (2011)); State in Interest of K.O., 217 N.J. 83, 91 (2014) ("when construing the Legislature's words, every effort should be made to avoid rendering any part of

A-1661-18T2

the statute superfluous").  If personnel records, nearly every page of which would likely contain at least some of the information included in section 10's first exception, become government records, accessible as redacted to delete everything but the information in the exception, why include section 10 at all?

The answer we suspect is because personnel records of government employees have historically been treated differently from other sorts of public records.  When OPRA's predecessor, the Right to Know Law, L. 1963, c. 73, repealed by L.2001, c. 404, § 17, OPRA, eff. July 7, 2002, was enacted in 1963, Governor Hughes issued Executive Order 9, deeming "[p]ersonnel and pension records which are required to be made, maintained or kept by any State or local governmental agency" not "public records subject to inspection and examination and available for copying pursuant to the provisions of Chapter 73, P. L. 1963."  Exec. Order No. 9 (Sept. 30, 1963), 1 Laws of New Jersey 1963 1153, available at https://nj.gov/infobank/circular/eoh9.shtml. Executive Order 9 thus excluded all personnel and pension records from access under the Right to Know Law.

Governor Byrne refined the exemption for personnel records in Executive Order 11 in 1974, which provides:

> WHEREAS, Chapter 73, P. L. 1963, finds and
> declares it to be the public policy of this State that
> public records shall be readily accessible for
> examination by the citizens of this State for the

protection of the public interest except as otherwise provided by said law; and

WHEREAS, Said Chapter 73 provides that all records which are required by law to be made, maintained or kept on file by State and local governmental agencies are to be deemed to be public records, subject to inspection and examination and available for copying, pursuant to said law; and

WHEREAS, Said Chapter 73 provides that records which would otherwise be deemed to be public records, subject to inspection and examination and available for copying, pursuant to the provisions of said law, may be excluded therefrom by Executive Order of the Governor or by any regulation promulgated under the authority of any Executive Order of the Governor; and

WHEREAS, Section 3(b) of 9 issued by Governor Richard J. Hughes in 1963, states that "personnel and pension records which are required to be made, maintained or kept by any State or local governmental agency . . . shall not be deemed to be public records subject to inspection and examination and available for copying pursuant to the provisions of Chapter 73, P.L. 1963;" and

WHEREAS, Disclosure of the name, title and position of persons receiving pensions and of the type and amount of pension being received, is an insignificant invasion of privacy outweighed by the public's right to know who it is employing, what jobs they are filling and the identities of those receiving government pensions;

Now, Therefore, I, Brendan Byrne, Governor of the State of New Jersey, by virtue of the authority vested in me by the Constitution and statutes of this State, do hereby ORDER and DIRECT

22

A-1661-18T2

1. Section 3 (b) of 9 of Governor Richard J. Hughes is rescinded and any regulations adopted and promulgated thereunder shall be null and void.

2. Except as otherwise provided by law or when essential to the performance of official duties or when authorized by a person in interest, an instrumentality of government shall not disclose to anyone other than a person duly authorized by this State or the United States to inspect such information in connection with his official duties, personnel or pension records of an individual, except that the following shall be public

a. An individual's name, title, position, salary, payroll record, length of service in the instrumentality of government and in the government, date of separation from government service and the reason therefor; and the amount and type of pension he is receiving;

b. Data contained in information which disclose conformity with specific experiential, educational or medical qualifications required for government employment or for receipt of a public pension, but in no event shall detailed medical or psychological information be released.

3. This Executive Order shall take effect immediately.

Given, under my hand and seal this 15th day of November, in the year of our Lord, one thousand nine hundred and seventy-four, of the Independence of the United States, the one hundred and ninety- ninth.
/s/ Brendan Byrne
GOVERNOR

Attest:
/s/ Donald Lan,
Executive Secretary to the Governor

A-1661-18T2

> [<u>Exec. Order No. 11</u> (Nov. 15, 1974) 1 <u>Laws of New</u>
> <u>Jersey 1974</u> 765, available at
> https://nj.gov/infobank/circular/eob11.shtml (emphasis
> added).]

Thus, since the enactment of the Right to Know Law in 1963, the personnel and pension records of government employees have not been accessible to the public under statute. Governor's Byrne's Executive Order 11, making clear, however, that no governmental agency could use that ban on public disclosure of personnel and pension records to avoid disclosing "the name, title and position of persons receiving pensions and of the type and amount of pension being received," in light of "the public's right to know who it is employing, what jobs they are filling and the identities of those receiving government pensions."

When the Legislature repealed the Right to Know Law and replaced it with OPRA in 2001, it incorporated, almost verbatim, Governor Byrne's Executive Order 11 exclusion of personnel and pension records from the definition of government record and its limited exception making public the names, titles, positions, salaries and payroll records of any person employed by the government, as well as their length of service, date and reason for separation and the amount and type of pension the employee is receiving. N.J.S.A. 47:1A-10. Governor McGreevey contemporaneously issued Executive Order 21, continuing the exemptions in Executive Orders No. 9

(Hughes), and 11 (Byrne), for personnel records.  Exec. Order No. 21 (July 8, 2002), 34 N.J.R. 2487(a).

OPRA likewise provides that all government records

> shall be subject to public access unless exempt from
> such access by:  P.L.1963, c.73 (C.47:1A-1 et seq.) as
> amended and supplemented; any other statute;
> resolution of either or both houses of the Legislature;
> regulation promulgated under the authority of any
> statute or Executive Order of the Governor; Executive
> Order of the Governor; Rules of Court; any federal
> law, federal regulation, or federal order.
>
> [N.J.S.A. 47:1A-1 (emphasis added).]

Because OPRA "does not abrogate any exemption of a public or government record pursuant to the Right to Know Law, any other statute, resolution of either house of the Legislature, any duly adopted regulation, Executive Order, rule of court or federal law," Michelson v. Wyatt, 379 N.J. Super. 611, 619 (App. Div. 2005) (citing N.J.S.A. 47:1A-9; N.J.S.A. 47:1A-5(a)), section 10's exclusion of personal and pension records, and its exceptions, have to be interpreted in light of Executive Order 11.

Doing so leads us to conclude that the mention of an employee's name, title, position, salary, years of service, date and reason of separation, or the amount and type of the employee's pension in a personnel or pension record does not make that document a government record publicly accessible under OPRA, redacted to exclude all other information.  Instead, we conclude, in

25

accordance with Executive Order 11 that personnel and pension records are not to be made publicly accessible under OPRA, but that "an individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefor, and the amount and type of any pension received" is public information, notwithstanding its inclusion in personnel or pension records not available for inspection under OPRA.

Accordingly, we reject Libertarians' argument "that the settlement agreement was not wholly exempt from access" and that it was "properly released . . . in redacted form" as not supported by the language of section 10 or the history of excluding personnel and pension records from public access contained in Executive Orders 9 (Hughes), 11 (Byrne) and 21 (McGreevey). We also note that Libertarians acted in accordance with the long-standing understanding of the first exception to section 10, by asking the County in its records request for the PNDA, the settlement agreement and "[f]or Ellis, his name, title, position, salary, length of service, date of separation and reason therefore" in accordance with N.J.S.A. 47:1A-10.

We acknowledge Libertarians' argument that limiting it to "the section 10 information [the government] provides" is "problematic . . . because the very reason OPRA was adopted was so that members of the public may view records and not simply trust what the government tells them." That problem is

well-illustrated here by County counsel's representation in response to Libertarians' OPRA request that "Officer Ellis was charged with a disciplinary infraction and was terminated." While the County has maintained the response was not "inaccurate" as it "forced Mr. Ellis to resign and also left him exposed to the decision of the [PFRS] Board," we agree with Libertarians that OPRA was designed to prevent public agencies engaging in such inaccurate "spin."

We do not agree, however, with the trial court's statement that the County's mischaracterizing Ellis' separation as a termination instead of a resignation "in and of itself, [was] cause for [the] court to address at least that inconsistency, by releasing the portions" of the settlement agreement. We do not condone the County's misstatement regarding the reason for Ellis' separation, but neither do we accept that such should affect a statutory analysis, especially when the court has other measures, such as ordering the County to correct the record following the court's in camera review of the withheld documents and awarding the requestor its fees, to address the discrepancy.[4]

---

[4] In that regard, we note the trial court made several substantive rulings, including that Libertarians was a prevailing party, before viewing the settlement agreement in camera. The better practice would be to avoid substantive rulings until after in camera review. See e.g., Fisher v. Div. of Law, 400 N.J. Super. 61, 68 (2008) (remanding matter to the GRC to permit "a

A-1661-18T2

That the settlement agreement between the County and Ellis resolving the County's disciplinary charges against Ellis is not a government record accessible under OPRA does not end the matter. In its complaint, Libertarians alternatively sought disclosure of the document under the common law right of access. See N.J.S.A. 47:1A-1; Bergen Cty. Improvement Auth., 370 N.J. Super. at 516 (noting that "[i]n adopting OPRA, the Legislature expressly and unambiguously declared that the common law right of access remained a viable and legally independent means for a citizen to obtain public information"). Because the trial court found the settlement agreement was not a personnel record under section 10 and ordered it produced as redacted, it did not consider Libertarians' claim for disclosure of the settlement agreement under the common law.

The definition of a public record under the common law is broader than that of a government record under OPRA, encompassing any "record 'made by public officers in the exercise of public functions.'" S. N.J. Newspapers v. Township of Mt. Laurel, 141 N.J. 56, 72 (1995) (quoting N. Jersey Newspapers Co. v. Passaic Cty. Bd. of Chosen Freeholders, 127 N.J. 9, 13 (1992)). We have no doubt that the settlement agreement at issue here would

thorough in camera review of [records sought] for the purpose of determining if any privileges exist and whether a special surcharge [was] appropriate").

qualify as a public record under the common law, and that Libertarians can likely establish an interest in the subject matter of that agreement. See Educ. Law Ctr. v. N.J. Dept of Educ., 198 N.J. 274, 302 (2009) (explaining the two-step inquiry involved in the common law right of access). The sexual exploitation of inmates and detainees in the Cumberland County jail by corrections officers is undoubtedly a matter of intense public interest, as is the County's decision to permit an officer who admittedly engaged in such wrongdoing to retire in good standing.

We, however, are ill-equipped to conduct the balancing of Libertarians' interest in disclosure against Cumberland County's interest in confidentiality required under Loigman v. Kimmelman, 102 N.J. 98, 113 (1986), particularly given the County's past assertions that disclosure could affect a then-ongoing criminal investigation. The trial court rendered its decision in this matter nearly two years ago. We expect that the considerations, particularly as they relate to the investigation of wrongdoing in the jail, may well be different now. See O'Shea v. Township of West Milford, 410 N.J. Super 371, 388 (App. Div. 2009) (noting "[t]he balancing test for access under the common law requires factual determinations that are best left to the trial courts"); Hartz Mountain, 369 N.J. Super. at 183. We accordingly remand the matter to the trial court to balance the County's interest in confidentiality against the public interest in

disclosure of the settlement agreement.  See S. N.J. Newspapers, 141 N.J. at 75.

To sum up, we reverse the trial court's finding that the settlement agreement between Ellis and the County is a government record under OPRA, and reject the argument that it should have been produced in redacted form. We remand for the court to consider Libertarians' right to disclosure of the document under the common law right of access.  We also reverse the order for fees to Libertarians as a prevailing party under OPRA.  We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION